## Louisville & Nashville R. R. Co. v. Pearcy.

(Decided November 22, 1910.)

## Appeal from Knox Circuit Court.

1. Master and Servant—Negligence—Pleadings.—Under a petition charging that a brakeman was injured through the gross negligence of the agents and servants of a railroad company superior to him and in charge of the train, he can recover for any negligent acts of the engineer, whether they consist in failing to stop in obedience to a signal or in running the trian at too high a rate of speed.

2. Evidence—Statements Out of Court.—Where the fireman on the trial testified that he did not receive or transfer to the engineer a signal, statements made by him out of court to the effect that he had received and transferred the signal could be received only for the purpose of contradicting the fireman and not as substantive evidence, and they would not of themselves be sufficient to warrant the jury in finding that the fireman had received and transferred the signal.

3. Evidence—Rules of the Company.—Where the rules of the company are printed or written, the printed or written rules should be introduced if obtainable, as they are the best evidence of what the rules are. But, a railroad company may have rules that are not written or printed, and if so, parol evidence as to such rules is competent.

4. Instructions Authorized By Former Opinion.—Where this court in an opinion directs the lower court to give certain instructions, the trial court should give the instructions indicated if the evidence is the same in substance as the evidence on the trial from which the appeal was prosecuted. But if new issues are made or new facts appear on a re-trial, the court may give such suitable instructions concerning them as are necessary and proper.

JAMES D. BLACK, J. W. ALCORN, BENJAMIN D. WARFIELD, for Appellant.

B. B. GOLDEN, McCHORD, HINES & NORMAN, for Appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The facts of this case are quite fully stated in the former opinion that may be found in 121 S. W. 1037, and we will only restate such of them as appear to be necessary to understand the alleged errors relied on by counsel for appellant as sufficient to warrant a reversal of the judgment against it. Premising that the only negligence complained of consisted in the failure of the engineer to stop in obedience to a signal and in running at too high a rate of speed. Briefly, the evidence for appellee was to the effect that when the engine went in on the house track to get the cars there standing and put them in the train, there was a car attached to the tender of the engine, and three cars standing on the house track coupled together. That when he opened the house track switch, for the purpose of letting the engine and car attached thereto in, he was then standing on the engineer's side of the engine, and gave him the signal to back. That in obedience to this signal the engineer backed in on the house track.

That appellee then crossed over on the fireman's side of the engine, and ran ahead of the engine down to the point on the house track where the cars to be coupled were standing. That when he reached these cars, a hasty examination disclosed that the coupler was not in proper working order, and he then stepped out from the track on the fireman's side and gave what is called a steady signal. That after giving this signal, he again went to the coupler and tried to arrange it, when he found that it would take more time than he anticipated, and upon learning this he again stepped out from the track on the fireman's side and gave the stop signal, the engine at that time being about 500 feet from him. That when he gave the stop signal, he heard the engine shut off steam, and supposing it would stop in obedience to his signal, he again went back to the coupler for the purpose of putting it in condition to make the coupling, and was engaged in this work about a minute when he suddenly saw the car attached to the engine coming towards him at the rate of about eight miles an hour. That upon this

discovery, he attempted to get off the track, when he stumbled and fell, receiving the injuries complained of.

The testimony for the appellant is in substance that there was no car attached to the engine when it went in on the house track. That the three cars standing on the house track were not together, one of them being by itself and the other two about three car-lengths off. That the engineer in obedience to the signal to back in on the house track, did so. That after this, and before the tender of the engine came in contact with the first car standing on the house track, the fireman received a steady signal, and transferred it to the engineer, and within a moment or so afterwards a coupling was made to the first car, and then another signal to back was received by the fireman, who transferred that to the engineer, and in obedience to this signal the engine with the car that had been coupled on to it backed to where the other two cars were standing, making that coupling. That the engine at no time was running more than four miles an hour, and that no signal to stop was received either by the fireman or engineer. That the appellant was injured when the second coupling was made.

It will be observed that there are several material points of difference in the testimony for appellee and appellant. According to appellant's theory the engine was not moved at a speed exceeding four miles an hour, and no signal to stop was received by either the fireman or engineer, and two couplings were made, one to the first car and the other to the two cars standing some distance from it. While the theory of appellee is that a signal to stop was given and in obedience to it the steam shut off; that only one coupling was made or attempted to be made, as all the cars on the house track were standing coupled together, and when this coupling was made the engine was backing at a speed of about eight miles an hour. That he was injured when the first and only coupling was made or attempted to be made.

The petition did not specify the negligence complained of, merely charging that appellee "while in the line of his duty and under the direction and order of his superiors in that employment, who were the servants of the defendant, he was by and through the gross negligence of the defendant, its agents and servants and employes other than and superior to him in charge of that train, run down and run over by said train." So that, under the averments of this petition the appellee had the right to

rely for a recovery upon any negligent acts of the engineer, whether they consisted in failing to stop in obedience to a signal or in running the train at too high a rate of speed to safely make a coupling. Gaines v. Johnson, 133 Ky. 507.

The principal contention of counsel for appellant is that the peremptory instruction requested by it should have been given. The argument in support of this is that there was a total failure to show that the engineer received any signal to stop. It is true that the engineer testifies positively that he did not receive any signal to stop, from the appellee or the fireman or any one else, and that the fireman also testifies that he did not receive from the appellee or any other person any signal to stop, nor did he give such signal to the engineer. This being so, it is said that although the appellee gave the signal to stop to the fireman, and although the fireman did receive this signal, yet if he failed to transfer it to the engineer the company is not responsible because the negligence that resulted in the injury was due solely to the negligence of the fireman in failing to transfer the stop signal to the engineer; and as the fireman and the appellee were fellow-servants, the fireman's negligence cannot be attributed to the railroad company, nor can his negligence be a ground of recovery.

It is said in the former opinion that "the fireman and the brakeman were fellow servants. Southern Railway Co. v. Clifford, 110 Ky., 731. And as death did not result, the defendant was not liable unless it was gross negligence on the part of the engineer." And this statement of the law of fellow servants must control this particular case. It would, therefore, follow that if there was no evidence, direct or circumstantial, from which it could be reasonably and fairly inferred that the fireman received and transferred the signal to stop to the engineer, and this was the only ground of negligence upon which a recovery could rest, the case for the appellee must fail. But, it is also said in the former opinion that "the fireman in effect testified he received a stop signal from Pearcy and passed it to the engineer. In view of this evidence we cannot say that a peremptory instruction should have been given on the ground that the engineer did not receive the signal which Pearcy gave him." We have carefully examined the evidence of the fireman on the first trial with his evidence on the trial from which this

appeal is prosecuted, and there is no substantial difference in his testimony. If there was no other reason upon which to justify the action of the court in refusing to direct a verdict for appellant, we might well leave the contention that a peremptory instruction should have been given with this statement. Passing for a moment the evidence as to excessive and dangerous speed not brought out in the first trial, the court in the former opinion was evidently induced to make the statement that the fireman testified in effect that he had received the stop signal because the circumstances showed that he had received it and transferred it to the engineer. Among these circumstances that appeared in the first trial as well as in this, we may mention the fact that the appellee testifies that he gave the fireman a stop signal before the first coupling on the house track was made or attempted to be made, and the fireman although denying that he received the stop signal says that he received a steady signal before the first coupling was made or attempted to be made, and gave it to the engineer. He further testifies that when he gave the stop signal he heard the steam shut off, indicating that the fireman had received this signal and transferred it to the engineer, who in obedience thereto shut off steam, and it is shown that when steam is shut off under conditions like these it means that the engine has been stopped. And so, when analyzed the statement of the fireman that he did not receive or transfer to the engineer a stop signal is greatly weakened by his evidence in reference to getting and transferring a steady signal at the time appellee says he gave the stop signal. In addition to this, it is further shown that the fireman out of court said to several persons that he did receive the stop signal and gave it to the engineer, who failed to observe it. It is true that these statements out of court made by the fireman are not to be taken as substantive evidence, nor as sufficient to show that the engineer did in fact receive the stop signal and fail to observe it. Their only effect would be to show that the fireman's statement that he had not received it and had not transferred it was false. In other words, if the whole case for appellee rested upon the statement made by the fireman out of court, he could not recover, as it was necessary that he should show by evidence on the trial, either direct or circumstantial that the fireman had received the signal and transferred it to the engineer, who

failed to observe it. But the case for appellee does not depend alone upon the direct evidence of whether or not the fireman received and transferred this stop signal to the engineer. The jury had the right to believe appellee's statement that he was injured when the first coupling was made and that he gave the stop signal to the fireman, and his statement that immediately thereafter the engine shut off steam, and from this infer that the signal had been received by the engineer, especially so as the fireman said that before the first coupling was made he received a steady signal and gave it to the engineer. Upon this evidence the appellee was entitled to go to the jury. But, in addition to this, if as appellee testifies, the engine came back at a speed of about eight miles an hour to make a coupling on a dark, rainy night, this under the evidence was in itself sufficient negligence on the part of the engineer to take the case to the jury, especially when it is kept in mind that appellee according to his story was injured when the first coupling was made and that the fireman admits he received and transferred to the engineer before this coupling was made a steady signal. For, even if it be conceded that the only signal the fireman received and transferred was the steady signal, it was clearly negligence after receiving this signal to come back under the conditions existing eight miles an hour.

Complaint is made that appellee and other witnesses in his behalf were improperly permitted to testify that it was customary to have two brakemen assist in making a coupling, when there was no evidence of a printed rule of the company in reference to this matter. The law, as we understand it, is that when there is a written or printed rule, it is the best evidence, and if obtainable should be introduced. In other words, the same principles of evidence apply to written and printed rules as do to other matters that are written or printed. But we do not understand it is necessary that all the rules and regulations of the company in practical use for the safety and government of its employes need be in writing. A railroad company may have unwritten rules and regulations, well known to its employes, and under which they may act and by which they may be controlled. And if it was shown that an unwritten rule or custom was recognized and observed by the company and its employes, we see no reason why it would not be competent in cases like this to admit it as evidence. We do not, however, wish

to be understood as holding that it would be negligence upon the part of a railroad company to fail to have two brakemen assist in making couplings. That question is not before us in this case. Nor was it made or attempted to be made a ground of negligence either in the pleadings or instructions, although both parties introduced some evidence on this subject, as they did upon the former trial. In commenting on this evidence, it is said in the former opinion: "There was much evidence about the rules of the company. Where the rules are in writing, the writing should be introduced for the written or printed rule is the best evidence." As the trial court was not directed to exclude evidence that it was the custom and practice to have two brakemen assist in making couplings like the one under consideration, it was justified in admitting it.

The instructions are also criticised. But, with the exception that the attention of the jury was called to the rate of speed at which the engine was running when the coupling was attempted to be made, and the qualifications of instruction No. 3, they conformed to the directions given in the former opinion.

On the former trial it does not appear that there was any evidence as to the speed at which the engine backed to make the coupling, or, if there was it was not brought out fully or made an issue in the case, and no instruction upon this question was given. But, on the last trial there was evidence upon this point, and we think the court properly instructed the jury concerning it. The practice in respect to following on a second trial the instructions directed to be given in the opinion of this court under which it is had is this: When the trial court is directed to give on a re-trial instructions indicated in the opinion, only those instructions should be given if the evidence is substantially the same as that in the record when the opinion was delivered. But if, upon a re-trial, new and authorized issues are made, or new and competent evidence is introduced, that it is proper and necessary the jury should be instructed concerning, then the court in addition to giving the instructions directed may submit new instructions suitable to the new issues or evidence. As it was admissible to admit evidence as to the speed of the train, so it was proper to instruct the jury upon this new issue made by the evidence.

It is argued that the instruction saying in substance that if the engineer discovered the peril in which appellee

was placed in time to avoid injuring him and failed to do so, this excused the contributory negligence if any of appellee, and should not have been given, as there was no evidence upon which to base it. We are not prepared to say that the instruction should have been given, nor yet can it be well said that it was prejudicial. The court was evidently influenced to give it by the evidence upon the subject of signals that the engineer testified were given by some person on the front of the tender as it backed, as well as afterwards from the first car coupled to. This evidence, as well as other that it seems unnecessary to relate, tended to show that the engineer knew that appellee was going to' make the coupling, and having this knowledge it was his duty to exercise care to avoid injuring him. And if his position was not known to the engineer, or if the engineer was confused by the signals he says he received, or there was confusion or uncertainty in his mind as to whereabouts of appellee the engineer should not have moved his engine until he had information reasonably sufficient to satisfy him that appellee was not in peril. And so under the peculiar facts of this case it may be said that when the engineer lost the location of appellee, or could not tell from the signals where he was, it was in effect the same as if the engineer discovered that he was in peril, and therefore, it was his duty to exercise ordinary care to avoid injuring him.

Upon the whole case, and a comparison of the evidence and instructions given on the former trial with the evidence and instructions on this one, we are of the opinion that there is no error in the record prejudicial to the substantial rights of appellant.

Wherefore, the judgment is affirmed.