## Bradas v. Henry Vogt Machine Company.

(Decided May 25, 1917.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

Master and Servant—Duty to Maintain Lookout—Contributory Negligence.—Wherever it is the duty of the master to maintain a lookout duty for his servant, although the servant is guilty of contributory negligence, but, for which he would not have been injured, yet, the master is not excusable, if his servants, whose duty it is to maintain a lookout, saw the peril of the injured servant, or by the exercise of ordinary care in maintaining the lookout, could have seen it in time to have saved the servant from injury, by the exercise of ordinary care.

AUGUSTUS E. WILLSON, MARTIN G. MORAN and RICHARD P. DIETZMAN for appellant.

EUGENE R. ATTKISSON and BARRETT, ALLEN & ATTKISSON for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellant, William T. Bradas, was by occupation a painter and had been engaged for nine or ten years, in greater part, as a painter of carriages and automobiles, but was, also, a painter of houses. He

was employed by the appellant, Henry Vogt Machine Company, to assist in painting the building in which its manufacturing concern was located. While working there, he was under the direction of a foreman, who directed him what to do and the manner of its being done. The building was about three hundred feet long and through the center of it, from the north to south, there was a wide aisle or room, the width of which the evidence does not disclose. On either side of this room, extending from north to south, was a row of steel posts. About twenty feet from the ground, on either side, was fastened to these posts a sheet or girder of metal, which was surmounted by what is called a "T" rail. Supported by these "T" rails, situated upon either side, was a movable crane, having at either end a wheel, which fitted to and ran upon the "T" rail as its track. This crane extended entirely across the room from one of the "T" rails to the other. Thus attached, the crane could be moved the entire length of the room from north to south, and was used in moving heavy weights, which were attached to the crane by a chain, which extended from the middle of the crane in the direction of the floor of the building. The crane was operated by means of an electrical apparatus, and the individual who controlled the operation of the crane, had his position in a small cage, which was underneath the crane and near the east end of it. The crane was not controlled in its movements, from one end of the room to the other, by any schedule, but was operated and moved backward and forward, as it might be necessary, in the movement of heavy bodies. On the west side of the room, about fifteen feet from the floor and adjoining the "T" rail upon that side, was a room called the "cupola" room. This room was twenty or thirty feet square, and from the floor of it, which was about eight feet below the "T" rail, on the west side, it was enclosed up to the "T" rail by metal sheets and extending from the floor, up to about even with the top of the rail, upon the inside of the room, was an iron lattice work, and the remainder of the room, from the rail up to the ceiling was unenclosed. Several men, including the appellant, under the direction of their foreman, were sent up into this room to do painting, and the appellant was directed by the foreman to take a pneumatic hose blower, and to blow the dust from the lattice work on the inside of the

"cupola" room, and from the rail, on the side next to the "cupola" room, and then to paint the lattice work and the rail up to the "ball," or the portion of it, upon which, the wheel of the crane traveled. He made a small platform out of some boxes and got upon it, which elevated him until the portion of his body, above the waist line, was above the "T" rail, and while there at work the crane was moved and ran over his arm above the elbow, crushing it and making the amputation of it necessary. At this point the evidence becomes very contradictory. The evidence for the appellant conduced to prove, that he did not know that the crane was being operated on the morning of the injury, and that the accident occurred to him after he had been engaged at work for about five minutes; that the pneumatic blower made considerable noise and prevented him from hearing the approach of the crane, and that the dust, which he blew away with the blower, confused his sight; that he had the blower in his right hand, with his back toward the south, and that the nature of his work brought him in very close proximity to the rail, and while thus engaged, the crane was moved without any warning to him, and that the boxing, which enclosed the wheel, at the end of the crane and protruded over on the side, where appellant was working, beyond the rail, struck him on the shoulder, knocking his right arm down upon the rail, when it was caught by the cogs of the wheel and his arm crushed. The crane approached him from the south and at his rear. It was, furthermore, shown by his evidence, that no lookout duty was kept by the company for him, and no warning given to him of the approach of the crane; that he had no notice, that he was, in anywise, in danger, until he was struck by the boxing, which enclosed the wheel. Upon the other hand, the evidence for appellee conduced to prove that the appellant had been engaged in working, within the building and underneath the crane for several days, and was acquainted with the manner of its operation, and with the danger of getting upon its track; that he had previously painted the metal course underneath the rail; that his work did not bring him necessarily closer to the rail than seven or eight inches; that just previous to the accident to him, the crane was being moved backward and forth across the room, and that the operator of the crane, in moving it from the north to the south end of the room, observed

appellant's arm lying upon the rail; that he stopped the crane and called to appellant and told him to remove his arm from the rail and warned him, in the future, to keep off of it; that appellant then moved his arm from the rail, when the crane was moved on past him toward the south end of the room, and within four or five minutes was moved back toward the north end of the room. The operator of the crane occupied a cage that was suspended underneath the crane, on the opposite of the room from where appellant was at work, and that the operator kept a lookout on the rail for appellant until the wheel of the crane arrived within about ten feet of where appellant was, when his sight was cut off and he could not see the rail in front of the wheel; that other workmen upon the floor of the main building saw appellant's arm lying upon the rail, when the wheel of the crane was approaching within a short distance of it, and they called out a warning to him from where they were, but he did not hear the warning or failed to take heed, and the wheel of the crane ran over his arm and crushed it; that there was no boxing over the wheel, which could have protruded over the rail, and there were no cogs in the wheel. The appellant denied that the operator of the crane had given him any warning; previous to his accident, or that any one else had given him any warning, or that he had his arm at any time lying upon the rail. The foregoing is a sufficiency of the evidence to indicate what the issues in the case were, and a sufficiency to determine what the instructions from the court to the jury, as to the law of the case, should have been. The trial resulted in a verdict of the jury for the appellee and a judgment of the court dismissing the petition. The appellant's motion for a new trial being overruled, he has appealed his cause to this court and complains as a ground for reversal of the judgment that the court erred to the prejudice of his substantial rights in refusing instructions offered by him and in giving to the jury instructions 1 and 3.

Instruction No. 1, given by the court, is as follows:

"If you believe from the evidence that the work which the plaintiff was doing brought him into a place of danger from the movement of the traveling crane, then it was the duty of the defendant to exercise ordinary care to avoid injuring him and that duty included the duties of having a lookout kept for him and to give

him reasonable and timely warning of the movement of the crane. If you believe from the evidence that the defendant failed to observe any one or more of those duties and that by reason of that failure, if there was any, the crane ran upon the plaintiff and he was thereby injured, then the law is for the plaintiff and you should so find. But unless you so believe from the evidence, then the law is for the defendant and you should so find.''

Instruction No. 2, is as follows:

''It was the duty of the plaintiff to exercise ordinary care for his own safety. If you believe from the evidence that in doing his work he leaned upon the track of the crane and that in so doing, if he did so, he failed to observe that degree of care just mentioned and that by reason of such failure, if any there was, he so helped to cause and bring about the injuries of which he complains as that but for such failure, if there was any, he would not have been injured, then the law is for the defendant and you should so find, even though you should believe from the evidence that the defendant failed to observe some one or more of the duties mentioned in the first instruction as incumbent upon it.''

Instruction No. 3, is as follows:

''If you believe from the evidence that the plaintiff knew that the traveling crane was being operated on the morning of his injury, then it was the plaintiff's duty to exercise ordinary care for his own safety and to that end to use the faculties of sigh, and hearing in order to discover the approach of the crane and keep out of its way. If you believe from the evidence that he knew that the crane was in use and that he failed to observe any one or more of the duties just enumerated and that by reason of such failure, if any, the crane ran upon him, then the law is for the defendant and you should so find.''

It is the contention of the appellant that the first instruction does not sufficiently define the duties of the appellee in maintaining a lookout for him and giving him timely warning. It is conceded to be a primary rule governing the rights of an employer and employee, that it is incumbent upon the employer to use ordinary care to provide and maintain a reasonably safe place in which the servant may do his work. The close proximity of the appellant to the wheel of the moving crane, in doing the work, which he was directed to do by the foreman; the

fact that the crane was being operated by electricity, and the considerable noise made by the pneumatic blower, which would tend to prevent the appellant from hearing the approaching crane, and the further fact, that the crane did not move upon any scheduled time, and that the appellant was necessarily engaged upon the work assigned to him, in order that he be provided with a reasonably safe place in which to do his work, it seems necessary that a lookout should be maintained for his benefit and reasonable warning given to him of the approach of the crane. The servant of the appellee, who operated the crane, knew of the presence of the appellant so near to the rail as to be in probable danger from the operation of the crane. The trial court so instructed the jury, as will be observed from instruction No. 1. The appellant, however, insists that the jury should have been instructed, that the appellee should have kept a lookout for the appellant and to have given him timely warning upon each occasion of the crane approaching him. This criticism of instruction No. 1 seems to be without merit, as the instruction given required the appellee to maintain a lookout and to give the appellant timely and reasonable warning of the movement of the crane, which, of course, included every time the crane was moved by the point at which appellant was at work; and the instruction appears to have been as favorable, as the appellant was entitled to.

Instruction No. 2 defined the contributory negligence on the part of appellant, which would deprive him of any right of recovery. The contributory negligence on the part of appellant, which caused his injury, if such was the fact, was standing with his arm resting upon the track of the crane. Whether in so doing if he did so, he failed to exercise ordinary care for his own safety, under the circumstances surrounding him, was a question for the jury. The instruction, after stating that it was the duty of the appellant to exercise ordinary care for his own safety, then directed the jury in substance, that, if, in doing his work, he leaned upon the track of the crane and, in so doing, failed to exercise ordinary care for his own safety, and so helped to cause and bring about the injuries of which he complains, as but for such failure of ordinary care, he would not have been injured, then the law was for the appellee and to so find, even though the jury should believe from the

evidence, that the appellee failed to observe some of the duties enjoined upon it by the first instruction. This instruction was substantially correct, as far as it went, and appellant could not complain of it, but for the fact that he objected to it and offered an instruction, which provided, in substance, a qualification to the effect, that although the appellant was guilty of contributory negligence, but for which the injuries would not have occurred, yet, if the ones in charge of the crane saw the peril of appellant, or by the exercise of ordinary care in maintaining a lookout, could have seen his peril, in time to have stopped the crane or to have given him warning, so that he could have escaped the injury, before the injury was incurred, and thereafter failed to use ordinary care to avoid injury to him, the jury should find for appellant. The appellant was directed to work, as he contends, and such his evidence conduces to prove, in a place of danger, and being there engaged in the work assigned to him, and the appellee being under the duty of exercising ordinary care to provide him a reasonably safe place in which to work, owed him the lookout duty, and he had a right to rely upon the master to use ordinary care to prevent injury to him. If the operator of the crane, from his situation, could not maintain a lookout, some one else should have been designated to do so. To direct the jury that the master owed the servant a lookout duty and then to direct it, that if the servant was guilty of contributory negligence, but for which the injury would not have occurred, to find against him, and to allow the master's duty to end at the point where the lookout duty was maintained, would deprive the servant, in great part, of any benefit, which might accrue to him from the lookout duty, and impose upon him the entire risk of the danger, unless it is the further duty of the master, after the peril of the servant is discovered, or should have been discovered by the exercise of ordinary care, to use ordinary care to protect the servant from injury, when from his negligence, he has placed himself in peril. Without that duty upon the part of the master, a large part of the lookout duty would be without purpose. Where the duty exists to maintain a lookout and give timely warning, though the injured person was guilty of contributory negligence, but for which the injury would not have occurred, the master is not excusable, if his servants knew or by the exercise of ordinary care in

keeping a lookout, could have known of the peril of the injured person, in time, to have averted injury to him. This is the rule applied to persons injured by moving trains, where a lookout duty is imposed upon the ones operating the train, and by analogy it seems should be made applicable to the instant case. L. & N. R. R. Co. v. Yandell, 17 B. M. 598; L. & N. R. R. Co. v Collins, 2 Duvall 114; L & N. R. R. Co. v. Robinson, 4 Bush 507; L. & N. R. R. Co. v. McCoy, 81 Ky. 411; L. & N. R. R. Co. v. Earle, 94 Ky. 374; Cahill v. C., N. O. & T. P. R. Co., 92 Ky. 345; L. & N. R. R. Co. v. Schuster, 10 R. 65; L. & N. R. R. Co. v. Kray, 16 R. 797; L. & N. R. R. Co. v. Hickman, 17 R. 81; Railroad Co. v. Lewis, 18 R. 957; Flynn v. Ry. Co., 110 Ky. 662; L. & N. R. R. Co. v. Lowe, 118 Ky. 260; Washington Mfg. & Mining Co. v. Barnett, 19 R. 958.

The third instruction seems to be simply the giving of an instruction upon contributory negligence in another form from the second, and to be selecting certain specific things, which should be attributed to the appellant as contributory negligence, and the fault of it lies in imposing upon the appellant the risk of the negligence of the master, in failing to provide the servant a reasonably safe place to do his work, which the servant never assumes. The third instruction, upon another trial, should be left out entirely and the qualification added to the second instruction above mentioned.

For the foregoing reasons the judgment is reversed and cause remanded for proceedings consistent with this opinion.