## Louisville & Nashville Railroad Company v. Wright

## Louisville & Nashville Railroad Company v. Barr, Administrator Winford Wright.

(Decided March 21, 1919.)

### Appeals from Franklin Circuit Court (Two Cases).

1. New Trial—Newly Discovered Evidence.—Where the issue upon a trial was whether the plaintiff was then suffering from systemic poisoning or tuberculosis, a petition for a new trial alleging that the defendant could prove by the attending physician of plaintiff who died three months after the trial, that he died of tuberculosis, but the witness did not know the duration or contributing causes of the disease, did not state newly discovered facts of such a decisive character on the issue tried as to author-

ize a new trial, and it was not error to sustain a demurrer thereto.

2. Master and Servant—Negligence.—A master having knowledge that the work required of a servant is liable to cause him some injury of which the servant does not know and failing to warn him of any danger, is liable for all the injurious consequences that are proven to have resulted from the negligence directly and without intervening cause, regardless of whether or not the master ought to have anticipated the particular consequences that did result.

3. Negligence—Actionable Negligence—Evidence.—Where no injury ought to have been anticipated, as a matter of law there is no actionable negligence, because in the absence of some danger reasonably to have been anticipated there was no duty to warn, but when actionable negligence has been established the proximate results and amount of recovery depend upon the evidence of direct sequences and not upon the defendant's foresight, and are for the jury.

4. Appeal and Error—Instructions—Exceptions.—The defendant to save any question of the insufficiency of an instruction presenting plaintiff's right to recover, need only object and except to its being given, and is under no duty to suggest by an offered instruction a necessary element of plaintiff's right of recovery, omitted from such an instruction.

5. Appeal and Error—Instructions.—An instruction which omits a necessary element of a party's theory of the case can not be said as to his adversary to be correct as far as it goes or in any sense, nor does the rule apply to the adverse party that if an instruction is correct as far as it goes any omission not suggested by offered instruction is waived.

GUY H. BRIGGS and BENJAMIN D. WARFIELD for appellant.

JAMES H. POLSGROVE, LESLIE W. MORRIS, and SCOTT & HAMILTON for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming one and reversing the other.

On July 6 and 7, 1916, Winford Wright, employed as a section hand for the L. & N. R. R. Co., at the direction of the section boss, helped unload, at Jett Station, ties that had been treated with creosote oil.

In the following March he filed the first of these actions to recover for injuries alleged to have been sustained as a result of defendant's negligence in failing to warn him of the danger in handling such ties, which work he alleged was dangerous to his health and person, of which defendant knew or ought to have known, but of which he did not know.

Defendant's answer traversed the allegations of the petition, and in separate paragraphs pleaded assumed risk, contributory negligence and that if plaintiff was injured, which was denied, it "was not a probable consequence that would usually or ordinarily result from handling ties that had been treated with creosote oil," but "was due from some idiosyncrasy or peculiar susceptibility possessed by him and which does not exist in the ordinary run of men," and which was not known and could not have been known by the exercise of ordinary care, by defendant. A reply traversed the allegations of the answer.

A trial on September 18, 1917, resulted in a judgment for $5,000.00 in favor of the plaintiff, from which judgment the first appeal is prosecuted.

On December 20, 1917, the plaintiff died and the defendant brought suit against his administrator for a new trial, in which, after setting out the facts with reference to the former trial, it is alleged:

"Plaintiff says that one of the issues, and the principal issue, on the trial of the said action of Winford Wright against Louisville & Nashville Railroad Company at said term of this court, was the nature of plaintiff's disease and the question of whether or not that disease was the result of the handling of the creosote ties.

"The plaintiff states that it was admitted by both plaintiff and defendant in that action that tuberculosis was not and could not be the result of the handling of the creosote ties and the defendant contended that the plaintiff then had, and had, prior to the institution of this action, tuberculosis of the lungs, and the plaintiff denied this and said he was suffering from creosote poisoning, which affected his liver, muscles, nerves and eyes.

"Plaintiff states that on the issues thus formed a great deal of medical testimony was taken. All of the plaintiff's medical witnesses testified positively that he had no form of tuberculosis, and could not have contracted same as the result of handling creosoted ties. The defendant's medical witnesses all testified that he had tuberculosis but that he could not have contracted it from the handling of creosoted ties.

"Plaintiff states that thereafter the term of court in which this plaintiff's motion and ground for new trial was overruled on December 20, 1917, the said Winford

Wright died, and died as this plaintiff can and will prove, of tuberculosis of the lungs.

"Plaintiff states that he is able to prove this fact by Dr. Warren Monfort, who, on the 22nd day of December, 1917, certified that fact to the Registrar of Vital Statistics of the State Board of Health of the Commonwealth of Kentucky, a copy of which certificate is filed herewith.

"Plaintiff says that in the natural course of events it did not know these facts and could not have known these facts until after the term of this court had come to an end and the court had finally adjourned for said term, and that it is now willing, able and ready to prove the facts above set forth.

"Wherefore, the plaintiff prays that this court set aside the judgment entered heretofore in this case and grant this plaintiff a new trial in that case."

A certified copy of the report of the attending physician, Dr. Warren Monfort, to the Registrar of Vital Statistics is filed as an exhibit, in which it is stated: "The cause of death was as follows: Tuberculosis of lungs; Duration........years........mos.........ds. Don't know. Contributory: Don't know."

A demurrer was sustained to this petition for a new trial and the petition dismissed, from which judgment the railroad company is also appealing, the two appeals, by agreement, being heard together, and we shall first dispose of the latter.

It is insisted by counsel for the company, that since the demurrer admits all facts pleaded, death from tuberculosis is established upon newly discovered evidence and that fact is so conclusive of the issue tried and decided adversely to it as to furnish ground for a new trial; but is the fact that decedent died of tuberculosis three months after the trial, if admitted, conclusive or convincing proof that he had that disease at the time of the trial, as testified by medical witnesses for defendant, but denied by about the same number of physicians who testified for the plaintiff, who stated he was then suffering from systemic poisoning resultant from absorption of creosote? It is not alleged in the petition that this is true or could be proved and we would hardly risk the statement that such a fact is a matter of common knowledge, but further than this the petition states the newly discovered evidence to be the report of the attending physician, which surely can not be accepted for more than his opinion that decedent

died of tuberculosis, especially since he states he does not know the duration or any contributory cause of the disease, and there is no allegation or statement indicating any conclusive test or post-mortem examination or by what means this opinion or conclusion was reached. Hence we think the fact admitted upon demurrer to the petition is that Wright died of tuberculosis three months after the trial, as could be shown by the evidence of Dr. Montfort, who knows nothing of the duration or contrib-uting causes of the disease.

This new evidence certainly does not bring the case within the rule announced in Anschutz v. Louisville Ry. Co., 152 Ky. 741, chiefly relied upon by appellant, where a female, after recovering damages for negligence which was held upon conflicting proof to have rendered her bar-ren, gave birth to a child, nor is the newly discovered evidence of the decisive character held to be necessary to warrant a new trial in the other cases cited. Mason, Evans & Keys v. Meloan, 165 Ky. 582; Smith v. Chapman, &c., 153 Ky. 70, and National Concrete Cons. Co. v. Duvall, &c., 153 Ky. 394. Hence the court did not err in sustaining the demurrer to the petition for a new trial, and the judgment in that case is affirmed.

2. For reversal of the original judgment, it is urged first and principally that under the allegations of the petition and the proof, damages for only temporary or external and not permanent or internal injuries should have been allowed. We do not deem it necessary to discuss separately the allegations of the petition which we consider sufficient to support the verdict, because the whole question is presented by a consideration of the evidence. The only negligence alleged or supported by proof is the failure of defendant to warn plaintiff of any danger incident to handling creosoted ties, of which fact the evidence is quite contradictory, as it is upon the questions of whether or not there was any such danger, and whether the defendant had knowledge of any such danger. So these questions of fact were properly submitted to the jury. The real controversy is about the extent of the danger and the consequences of the neglect to warn if the jury believed from the conflicting evidence there was danger of which the defendant knew and failed to warn plaintiff, and as the jury found for plaintiff we shall assume for the purposes of this discussion there was danger of injury, at least externally, to persons handling creo-

soted ties, and the defendant knew of the danger of external injuries and failed to warn plaintiff thereof. There is, however, no proof that defendant or its agents had actual knowledge that there was any danger of internal injuries from handling creosoted ties, and its evidence is uncontradicted that this is the first instance of internal injuries from such work, if such it is, that has come to the knowledge of its agents and several disinterested witnesses, although experienced for many years in handling ties and other timber treated with creosote oil produced from coal tar as a preservative, just as in this case. We shall therefore also assume, but do not decide, that defendant could not by the exercise of ordinary care have known there was danger of internal injuries from such work, although it was shown by the evidence that technical works upon materia medica record the possibility of systemic poisoning by absorption through the pores of the skin from contact with coal tar creosote, or from inhalation of the fumes therefrom, and counsel for plaintiff have cited two cases from courts of last resort, one from Illinois, decided in 1910, and the other from Texas, decided in 1915, in both of which such results were established to the satisfaction of the juries, from which it might well be argued defendant could have known and ought to have foreseen the possibility of internal as well as external injury. We shall further assume, for the moment, that plaintiff did not know of any danger from such work because omitted from the instruction defining his right of recovery, although a controverted necessary element of such right and about which the evidence was conflicting.

Thus stripped, our inquiry is reduced to whether or not the defendant, with knowledge that the work required of plaintiff, was liable to cause him some injury of which he did not know, and having failed to warn him of any danger, is liable for whatever injury he sustained, as is contended by counsel for plaintiff, or is liable only for such injuries as the defendant in the exercise of ordinary care ought to have known might result, as is contended by counsel for the defendant. The two cases cited by defendant, Pinkley v. C. & E. I. R. Co., 246 Ill. 370, 92 N. E. 896, 35 L. R. A. (N. S.) 679, and Pecos & N. T. Ry. Co. v. Collins, 173 S. W. 250, are exactly in point and sustain its contention, although from the former opinion three members of the court dissented. Both of these cases,

the latter basing its decision upon the former, held that for constitutional disorders or systemic poisoning, that is the internal effects, which constitute the chief ground of complaint and basis of recovery in both cases, no recovery can be had for the reason that such consequences were not in law the proximate results of the negligence of the railroad company in requiring their employes to handle creosoted ties without warning them of the danger, because the danger of such internal effect was not shown to have been known, or that it could have been known by the exercise of ordinary care, to have been liable to result and was not therefore a natural or probable consequence of the negligence that ought to have been foreseen in the light of the attending circumstances. Both cases are based upon the general rule that the damages which are recoverable for negligence must be such as are the natural and reasonable result of defendant's act, and the consequences must be such as in the ordinary course of things would flow from the acts, and can be reasonably anticipated as a result thereof.

This court, in the case of Gosney v. L. & N. Ry. Co., 169 Ky. 323, after a careful examination of the authorities from many jurisdictions, stated the rule thus:

"It is generally held that in order to warrant a finding that negligence or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was a natural and probable consequence of the negligence, or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

While this language is broad enough to give support to the defendant's contention, it must be remembered that it is a statement of a general rule, and as such is possibly as accurate as could have been employed; at least it is the accepted statement of the general rule. An examination of the case, however, will show that the rule was applied, as is usually the case, simply to show that the defendant incurred no liability where no danger of any kind to the plaintiff ought to have been foreseen in the light of the attending circumstances as the natural and probable consequence of the alleged negligence or wrongful act, and this is, we apprehend, the full extent of its meaning and correct application, since otherwise it will not fit in harmoniously with many decisions of this court as well as others, holding that where injury ought to have been foreseen and anticipated from a negligent

act, the defendant is liable not only for such consequences as it knew or in the exercise of ordinary care ought to have known might result from its negligence, but for all consequences that, free from intervening causes, proximately result regardless of whether or not the particular consequences that did result ought to have been anticipated.

In the Gosney case, as in the Gould v. Slater Woolen Co., 147 Mass. 315, 17 N. E. 531, cited in the Pinkley case as sustaining its conclusions, the act complained of was not actionable negligence, because no injurious consequences to the plaintiff ought to have been anticipated as the natural and probable result thereof, and the general rule as stated was applicable, while in the case at bar, as in the Pinkley and Collins cases, the act complained of was actionable negligence because some danger ought to have been anticipated as the natural and probable consequence to plaintiff from the failure to warn, and in our judgment the general rule is not applicable.

The question gets down in the final analysis to whether or not, after actionable negligence by defendant to the plaintiff has been established, the court or the jury is the proper tribunal to decide what parts of the consequences proven to have followed directly and without intervening causes from the act complained of, are the proximate result of the established negligence. Of course, if there is no proof that any injurious consequence has followed directly and without intervening causes from the negligence complained of, the question is for the court, but as we shall attempt to show if there is any evidence that an established condition was produced directly and solely by the negligence, the question is for the jury upon all the evidence and under proper instructions to decide whether it is a proximate result.

Manifestly attempting to apply the first part, and overlooking or not agreeing to the latter part of this proposition, it was held in both the Pinkley and Collins cases that as a matter of law internal injuries from handling creosote timber were not proximate results of a neglect to warn, simply because there was no proof that such injuries might have been foreseen as an ordinary or natural consequence of a failure to warn. We find ourselves unable to agree with this conclusion, although within the letter of the general rule and although we have been unable to find any case exactly in point upon all of

its facts as are these two cases; however, there are many
analogous cases from this and other courts which are not
only not in harmony with, but are directly opposed to, the
conclusions reached in the Pinkley and Collins cases.

In L. & N. R. R. Co. v. Daugherty, 108 S. W. 336, the
defendant insisted that it was only liable for the specific
discomforts, which it ought to have foreseen and which
were imposed upon the plaintiff by the violation of the
duty it owed her not to obstruct a public crossing for an
unreasonable length of time; and that it was not liable
for any aggravation of an existing disability, because
such a consequence could not have been reasonably fore-
seen or anticipated by the defendant, and therefore was
not the proximate result of the negligence complained
of. In denying this contention, the court said:

"It is sufficient to say that, when an act of negligence
has been committed, or a wrongful act done, resulting
in injury or damage, the party committing it will be re-
sponsible for all the consequences that naturally and
reasonably flow from the negligent or wrongful act, al-
though the result may not be immediately connected with
the cause."

In the case of Seckinger v. Philibert & Johanning Mfg.
Co., 31 S. W. 960, the Missouri Supreme Court, in dis-
posing of the defendant's contention that it was not liable
for tuberculosis proven to have resulted to the plaintiff
from being struck in the chest by a piece of wood, as the
result of the defendant's negligent act, because it could
not have anticipated such a consequence, said:

"A still further contention is that the disease of pul-
monary consumption did not result proximately from the
blow plaintiff received on the chest, and it was error to
permit the jury to take it into consideration in consider-
ing their verdict. This was a question for the jury under
the evidence, which tended to show that consumption was
superinduced by the blow on the breast. There was no
intervening agency in this case, between the blow on the
chest and the consumption, which followed in a few
months thereafter."

In Kentucky Heating Co. v. Hood, 133 Ky. 389. citing
many authorities, we said:

"It is not material whether it was in the contempla-
tion of the wrongdoers that loss of business or profit
would result to the injured party. In actions for breach
of contracts, the rule generally held to is, that only such

damages can be recovered as are actually sustained, or such as it is reasonable to conclude were within the contemplation of the parties at the time the contract was entered into. 2 Chitty on Contracts, p. 1324. But this measure that obtains in contracts will not be applied in actions sounding in tort. There is a wide difference between the rights and remedies allowable in the one case and in the other. 1 Sutherland on Damages, Sec. 15.

"It is the wrongful act done, and the consequences that naturally result from it, that the law looks at and holds the wrongdoer responsible for. A person who commits a tort like this is liable for all the damages that naturally flow from, and are the result of, this wrongful act, although he may not at the time have given any thought to or have anticipated that injurious consequences would follow. It is no excuse or defense for the wrongdoer that he did not mean to commit any wrong, or did not know that any injury or loss would ensue."

This ruling was expressly approved in L. & N. R. Co. v. Haggard, 161 Ky. 317; Lyttle, Admr. v. Harlan T. & T. Co., 167 Ky. 345, and L. & N. R. Co. v. Comley, 169 Ky. 11, but it must be noticed that cases which go to the extent of holding the tort feasor liable for all damages which proximately follow, or at all, regardless of whether any injury ought to have been reasonably anticipated are sustained by reason only where the tort amounts to active or wanton wrong such as trespass or assault, rather than ordinary negligence; for example, the wrongful act complained of in the case at bar is only ordinary negligence, that is a failure to perform a duty and not an active invasion of a right; nevertheless it is based upon tort and not upon a breach of contract, and the damages can not therefore be limited to anticipated injuries; but the right of action being for ordinary negligence, depends necessarily upon the reasonable anticipation of some injury because otherwise there is no breach of duty, and hence no negligence or wrongful act.

These distinctions are frequently ignored in the preparation and trial of cases and as a consequence many decisions may be found in which it is broadly stated that only such consequences as ought to have been anticipated are proximate results without reference to whether the suit is for damages for breach of contract, ordinary negligence or active wrong, and this fact accounts for much

of the confusion that exists with reference to proximate cause and its proximate results.

But we are relieved of the duty of an examination of the cases in an effort to harmonize or distinguish them according to these distinctions, since we find in 22 R. C. L., pages 125 and 126, a statement of the rule or rather an exception to the general rule, which we believe to be applicable here, with citation of authorities, an examination of which proves not only the recognized existence and soundness of the exception, but also that the application of the general rule in the Pinkley and Collins cases was not in harmony with the decisions in either Illinois or Texas. After restating the general rule in almost the exact language employed in Gosney v. L. & N. R. Co., *supra,* the author proceeds:

"It must not be supposed that the principle thus stated requires that he should have been able to foresee the injury in the precise form in which it in fact resulted, or to anticipate the particular consequence which actually flowed from his act or omission of duty. In other words, it is not necessary to a defendant's liability, after his negligence has been established, to show, in addition thereto, that the consequences of his negligence could have been foreseen by him; it is sufficient that the injuries are the natural, though not the necessary and inevitable, result of the negligent fault—such injuries as are likely, in ordinary circumstances, to ensue from the act or omission in question.

"Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate, and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow. The test is: would ordinary prudence have suggested to the person sought to be charged with negligence that his act or omission would probably result in injury to some one? It is otherwise, however, where there is an intervening efficient cause, in itself sufficient to break the causal connection between the original wrong and the injury. The reasoning on which this rule is founded is that the law regards only the general character of the act, for, as was remarked: 'When there is danger of a particular injury which actually occurs, we must surely say that is the usual, ordinary, natural and probable result of the act exposing the person or thing injured

to the danger.' The result seems to be that, when the act complained of was such that, in view of all the circumstances, it might not improbably cause damage of some kind the doer of the act cannot shelter himself under the defense that the actual consequence was one which rarely follows from that particular act. To hold so would be to say that a plaintiff must show similar injuries to have occurred in the same manner before he could recover. And it would lead to the anomalous result that for the first, and perhaps the second, injury occurring in such manner there could be no recovery; but for the third, or when the circumstances ceased to be peculiar or became familiar, the defendant would be liable.''

(See also 13 Cyc. 46; 29 Cyc. 493; Thompson on Negligence, sec. 59; Note at page 810 in 36 A. S. R. and cases cited on page 665 of vol. 6, L. R. A. Extra Ann.)

Anticipation of injury as a natural and probable result has nearly always been recognized as a necessary element of actionable negligence, and correctly so, but we submit in reason and upon authority too, it is only necessary to constitute actionable negligence that *some* injury ought to have been reasonably anticipated from the negligent act, and that when actionable negligence has been established the tort feasor is liable for *all* consequences that proximately result, without regard to just what injuries he ought to have anticipated, and that the jury rather than the court must decide from the evidence what consequences are proximate results, otherwise the court invades the province of the jury to determine the amount of damages that have proximately resulted from actionable negligence.

In the case at bar the jury have found from the conflicting evidence, as they had the right to do, that plaintiff's internal and permanent as well as his external and temporary injuries followed in unbroken sequence and solely from the failure to warn plaintiff of any danger; there was no evidence of any other or intervening cause to account for his change from a strong, robust man at the time of the injury to a physical wreck at the time of the trial, and we can see no justification for permitting the court to say that as a matter of law only such injuries as the defendant ought to have foreseen are proximate results, although we can and do understand perfectly the reason why the court must say as a matter of law there was no actionable negligence where no injury ought to

have been anticipated, because if no injury ought to have been foreseen there was no duty to warn, but when the failure to perform a duty has been established the proximate results and amount of the recovery depend upon the evidence of direct sequences, and not upon the defendant's foresight, and are for the jury, subject only to the power and duty of the court to set aside a verdict flagrantly against the evidence.

3. It is also insisted the court erred in refusing instructions C and D offered by defendant, the former eliminating any idiosyncrasy or peculiar susceptibility of plaintiff, as a basis of recovery and the latter limiting the recovery to external injuries, but there was no proof to support the former, which would not have been proper in any event, and the latter was not authorized as we have already decided.

4. Another insistence is that the motion for a directed verdict should have been sustained because of plaintiff's failure to prove his alleged lack of knowledge of danger, but upon this question the evidence was conflicting as plaintiff testified he did not know of any such danger, in which he was contradicted by one of defendant's witnesses, and although he admitted some inconvenience the first evening, July 6th, we do not consider it possible to so separate the two successive days, July 6th and 7th, he was engaged in this work as to be able to say as a matter of law that his injuries were the result of the second day's work, and that the first day's experience was sufficient to establish knowledge of danger; hence the court did not err in refusing to take the case from the jury.

5. Finally it is urged the instruction defining plaintiff's right to recover was prejudicially erroneous in failing to make his alleged ignorance of danger an element of that right, and this was error as this fact was at issue upon both the pleadings and the proof, and he could recover only if the jury believed from the evidence that he did not know the work was dangerous. Defendant objected and excepted to this instruction, but counsel for plaintiff insist the instruction is correct as far as it goes, and as defendant offered no instruction covering the point he can not complain of the error under the thoroughly established rule to that effect. The trouble with this argument is that neither the statement of fact nor the rule though thoroughly established is applicable. The

instruction complained of presents plaintiff's theory of the case and in so doing omits a necessary element of his cause of action and right to recover, and all that the defendant needed to do to save the question of any defect, therein, was to object and except, since it was under no duty to supply omissions or correct mistakes in the instruction for his adversary. The rule relied upon refers only to instructions presenting the theory of the party objecting, who, to save an omission, must not only object and except, but offer an instruction covering, though incorrectly, the point omitted. See L. H. & St. L. Ry. Co. v. Roberts, 144 Ky. 824, for a statement of the rule; also L. & E. Ry. Co. v. Crawford, 155 Ky. 723; Hobson on Instructions, sec. 41, and cases there cited. It would not do to say an instruction presenting an adversary's theory of the case was correct as far as it goes, or correct in any sense, if it did not go far enough to present all essential elements of his right of recovery, and to apply the rule, as plaintiff seeks to do here, and as was said in C. N. O. & T. P. Ry. Co. v. Martin, 147 Ky. 262, might be done under similar circumstances, although the case was in fact affirmed because the omitted part complained of was not essential, would place upon the defendant not only the duty of seeing that its defense was properly presented, but also the duty of showing the plaintiff and the court how his right of recovery ought to be presented to the jury. Such a duty can not be imposed upon an adversary, and the rule under consideration can not be carried to that length without doing violence to every recognized rule of practice. As this error permitted a recovery regardless of a necessary element of the right to recover, which was in issue, it was necessarily prejudicial.

Wherefore the judgment in the original case is reversed and the cause remanded for another trial consistent herewith.