## Chesapeake & Ohio Railway Company v. Kennard.

(Decided February 24, 1928.)

### Appeal from Lewis Circuit Court.

1. Master and Servant.—In action against railroad for injuries to workman engaged in riveting steel plates to girders on railroad bridge by operation of air compressor, testimony as to railroad's failure to have red flag or watchman present to signal approaching trains for protection of carpenter force when operating air compresser on bridge was admissible, where it was the custom of the company to have flag or watchman present under such circumstances.

2. Master and Servant.—Where air compressor used in riveting steel plates to girders on railroad bridge produced considrable noise and obstructed vision of employee, railroad company was under duty to adopt some means of warning employee against possible danger from passing trains.

3. Appeal and Error.—In action for injuries to employee of railroad operating air compressor for purpose of riveting plates to girders of railroad bridge, admission of parol testimony with reference to rule of railroad requiring use of red flag or watchman to signal approaching trains without first introducing rule, if erroneous, held not projudicial, where railroad's duty to warn existed by reason of custom and nature of work, which produced considerable noise and obstructed employee's vision.

4. Trial.—In action against railroad for injuries to employee struck by train while operating air compressor on railroad bridge, failure

of court, in instruction requiring that reasonable lookout be maintained for plaintiff's safety, to refer to alleged statement of foreman in leaving bridge, held not error under evidence, where there was no showing that plaintiff had heard statement.

5. Master and Servant.—Where railroad was under duty to keep lookout for purpose of warning plaintiff employee operating air compressor on railroad bridge of approaching trains, foreman's statement to plaintiff's companion that men would have to look out for themselves amounted to mere delegation of railroad's duty, not relieving railroad from liability for injuries in case fellow workman failed to perform that duty.

6. Trial.—If railroad desired to have submitted to jury issue whether plaintiff operating air compressor on railroad bridge failed to keep lookout for trains when lookout maintained for him was temporarily suspended, it was under duty to offer an instruction on that point, since matter contended for involved exclusively defensive issue of contributory negligence.

7. Damages.—$10,000 verdict for injuries to 46 year old member of carpenter's crew working for railroad, on account of breaking of bones in back and shoulder and leg causing recurring pain and permanently impairing use of arm and reducing usefulness of leg, and for disability and pain due to disturbing of normal function of organs because of broken transverse processes in back, held not excessive.

8. Appeal and Error.—Appellate court will not interfere with verdicts on ground of excessiveness so long as it does not appear that members of jury were influenced by passion and prejudice, since best method for ascertaining amount of damages to which plaintiff is entitled is jury's verdict.

BROWNING & REED for appellant.

ALLEN D. COLE and NORMAN W. BOWMAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On February 10, 1925, the appellee and plaintiff below, Sam Kennard, who was 46 years of age, was a member of a carpenter's crew working for the appellant and defendant below, Chesapeake & Ohio Railway Company. At the time of the accident of which he complains in this case he and a fellow workman by the name of Dean were engaged in riveting steel or iron plates to the girders of a portion of the railroad bridge at Covington across the Ohio river, and they were stationed on one of the double tracks of the appellant laid on that bridge. The work was done with a rivet hammer operated by compressed air, and when in action it produced a constant and very loud noise. The work also required the

one engaged in it to focus his attention, as well as his
vision, upon the rivet being driven and the hammer.
While plaintiff was engaged in operating one of the ham-
mers, the Maysville accommodation passenger train
backed across the bridge from Cincinnati and collided
with him, producing the injuries to recover damages for
which he filed this action against defendant in the Lewis
circuit court. The negligence relied on in the petition
was the failure of defendant's servants on the colliding
train to observe legal and proper care for plaintiff's pro-
tection, and the failure of the foreman of his crew to
take proper precaution to protect him while engaged in
that character of work at the place where he was required
to perform it. The answer was a denial with pleas of
contributory negligence and assumption of risk, both of
which were denied by a reply, and upon trial there was
a verdict in favor of plaintiff for the sum of $10,000.
Defendant's motion for a new trial was overruled, and
from the judgment pronounced on the verdict it prose-
cutes this appeal, urging through its counsel three
grounds for reversal, which are: (1) Incompetent evi-
dence introduced by plaintiff over its objections; (2)
improper instructions; and (3) that the verdict is exces-
sive.

The alleged erroneous evidence complained of under
ground (1) consisted of parol testimony with reference
to the contents of a rule promulgated by defendant and
under which plaintiff was working at the time, without
first introducing or offering to introduce the rule, or
showing why plaintiff was unable to do so, and the cases
of L. & N. R. R. Co. v. Pearcy (Ky.) 121 S. W. 1037 (not
elsewhere reported); L. & N. R. R. Co. v. Pearcy, 140
Ky. 677, 131 S. W. 1036; and L. & N. R. R. Co. v. McCoy,
177 Ky. 415, 197 S. W. 801, are relied on in support of
that contention. The substance of those opinions on the
point under consideration is as stated in 140 Kentucky
(opinion) that:

"The law, as we understand it, is that when
there is a written or printed rule, it is the best evi-
dence, and if obtainable should be introduced. In
other words, the same principles of evidence apply
to written and printed rules as they do to other
matters that are written or printed."

There can be no fault found with that universally
established principle of the law relating to the production

of evidence, but the question here is: Did the court fail to observe it, and, if so, was it of sufficient prejudice to authorize a reversal therefor? The rule of defendant attempted to be so proven was one requiring the putting out of a red flag or watchman to warn and signal approaching trains and to thereby protect the carpenter force when operating the air compressor in performing the character of work in which plaintiff was engaged at the time from a collision with approaching trains. The questions eliciting the testimony complained of contained an inquiry, not only with reference to a *rule* of the company on that subject, but also as to the *custom* of the company under such circumstances. The witness answered that is was *customary* to take such precautions for the protection of the crew while so engaged, because, as explained, the work was of such nature and accompanied with such loud noise that those engaged in it were prevented from hearing the approach of a train and were largely prevented from seeing its approach, since the work required constant focusing of vision on the operation of the rivet hammer. If there was such a custom, as was uncontradictedly proven, then plaintiff had the right to rely on it regardless of the fact as to whether it had been incorporated in a written or printed rule. Moreover, defendant's witnesses when on the stand admitted the existence of such a rule, and there was no evidence to the contrary. Furthermore, in the case of Bradas v. Henry Vogt Mach. Co., 175 Ky. 803, 194 S. W. 1044, a question very analogous to the one here involved was before the court. The operation by the injured servant in that case of the device that he was working produced considerable noise, as well as an obstruction of his vision by the creation of flying dust, and we held that, independently of any rule, and under a well-established principle of the law of negligence, it was the duty of the employer to adopt some means of warning against possible danger from the operation of other machinery that might injure plaintiff. That being true, the fact that plaintiff in this case sought to create that duty by the introduction of the contents of a printed rule could have no prejudicial effect upon defendant's rights, since the purpose of proving the rule was the creation of a duty to plaintiff.

If the custom was, as we have seen was true, for defendant to take the precautions embodied in the alleged erroneously proven rule, then the erroneous testimony

complained of would not be prejudicial to the defendant, since, in that case, the duty existed independently of any rule. We therefore have two legitimate grounds upon which proof of defendant's failure to take such precautions was admissible in this case, and the fact that another third one was established by evidence that defendant's counsel claim was erroneous and which might for the purposes of this case be admitted as true, but it could not possibly prejudice defendant's rights, since the duty sought to be established by the alleged erroneously proven rule was already established by other admissible methods to say nothing about the admission of the existence of the rule as well as its prior observance (and which also included the custom) by defendant's witnesses, one of whom was the foreman under whom plaintiff was working. We therefore conclude that ground (1) is not available to defendant in this case.

Ground (2) is directed only to instruction 1 given by the court, which, in substance, told the jury that it was the duty of defendant's foreman, or some other servant of it at the time and place when and where the accident occurred, to exercise ordinary care in keeping a reasonable lookout for the purpose of warning plaintiff of the approach of trains while engaged in that particular kind of work. The complaint is that it did not embody the idea or make any reference to a statement made by the foreman in his testimony to the effect that he (the foreman) in person had been maintaining a lookout for the protecting purpose indicated, but that he had occasion to leave the top of the bridge and go to the ground for the purpose of getting more rivets, and that when he left he said: "You fellows (plaintiff and his working companion, Dean) will have to lookout for yourselves." It is argued that the instruction should have relieved defendant of the duties required of it therein, if the jury believed that plaintiff was so warned by the foreman during whose absence the accident occurred. In the first place the foreman did not pretend to say that plaintiff or his companion heard such statement, if made; nor did he testify that it was made under such circumstances as to raise the inference that it might have been heard by plaintiff. He merely stated that when he left the place where he was stationed as a lookout he made the statement and that he was near enough to Dean for him to have probably heard it. He did not state how near he was to plaintiff, nor whether the latter's atten-

tion was attracted to him when the statement was made, nor did he state any other fact from which it might be inferred that plaintiff did hear it. Both Dean and plaintiff state positively that no such statement was made, or, if done, that it was not heard by them. Under such circumstances, even if Dean had heard it, it would amount to no more than a delegation to him of the observance of defendant's duty to plaintiff, and if he failed to perform it, and the injury to plaintiff proximately resulted from such failure, defendant would be responsible.

Moreover, defendant offered no instruction based upon the concrete fact of plaintiff continuing to operate the compressor with the knowledge of a temporary suspension of a lookout, and which forms the basis for the criticism of the instruction now under consideration. It is our conclusion that if defendant desired the submission of that issue to the jury it was its duty to offer an instruction on the point, since if the accident to plaintiff occurred because of his alleged derelictions in the manner contended for, it was contributory negligence on his part and was exclusively defensive, and which is a different question from the one involved in the case of L. & N. R. R. Co. v. Wright, 183 Ky. 634, 210 S. W. 184, 4 A. L. R. 478, relied on in support of this criticism. Other reasons might be assigned against this criticism of the instruction, but the one above given is sufficient to show that this ground (2) is without merit.

The excessiveness of the verdict complained of under ground (3) is more serious and has given us some trouble. Plaintiff was knocked some 15 or 20 feet by the collision with the backing passenger train. His body became involved in some manner with the steps of the rear passenger coach and by which he was bruised and injured, and, but for some other members of the crew immediately at the side and below the surface of the bridge on a platform, he would have been thrown to the ground below, a distance of some 30 or 40 feet. He received numerous injuries to his body, which, according to the medical testimony, "resulted in a unilateral fracture on the left side of the lumbar transverse processes, and a partial fracture of the scapula or shoulder blade, also exostosis of the femur and an intermalinosis of the bone of the leg." When translated into everyday language, those somewhat hidden and possibly alarming effects are explained to mean that the small bony and

pin-like projections from the joints of the back bone (called transverse processes) were broken off on the left side of the lower part of plaintiff's back; that one of his shoulder blades was broken; and that one of the bones of one of his legs was fractured. It is explained by the medical witnesses that the muscles in the lower part of the back, because of the broken transverse processes, healed in such a manner as to constantly and seriously affect the nerves of the back running out from that point, and which painfully and injuriously disturbs the normal functioning of some of the organs in the lower part of the body, not only disabling plaintiff but likewise producing periodical if not constant pain. The injured shoulder blade healed in such a manner as to greatly impair the use of one of plaintiff's arms, and the injury to his leg, while not serious, reduced the usefulness of that member below normal. It would serve no useful purpose to incorporate the testimony of both the professional and nonprofessional witnesses relative to the extent of plaintiff's injuries. Suffice it to say that there was enough of it to show that such injuries were both serious and permanent, and we are not prepared to say that the verdict, though liberal, was so excessive as to indicate passion and prejudice on the part of the jury.

Such questions must necessarily be determined by the particular facts of each case and largely by medical testimony. It is a well known fact that what to the layman might appear to be an insignificant injury (as perhaps would be true with reference to the injured transverse processes in this case) might actually be a very serious one, and yet when the physical consequences of this particular injury to plaintiff are explained by the medcial witnesses, it is shown that those apparently insignificant parts of the human anatomy called "transverse processes" perform a very important part in preserving the normal functioning of the body. If the injurious consequences flowing therefrom are as testified to by some of the physician witnesses, then plaintiff is seriously crippled on that account alone, and was permanently burdened with at least recurring pain and suffering resulting therefrom. His arm is quite seriously damaged, and, considering the testimony as a whole, the unbiased mind can arrive at no other conclusion than that plaintiff was entitled to a substantial verdict. While as a juror we might not have fixed the verdict at so large a sum, yet it is the well-settled rule that the best method

that the law can provide for the ascertainment of such facts is the verdict of a jury; and as long as it does not appear that its members were influenced by passion and prejudice, it is the duty of the courts to not interfere with verdicts on the ground of excessiveness. We have therefore concluded that we are not authorized under the facts appearing in the record to disturb the verdict on this ground.

Perceiving no error prejudicial to the substantial rights of the defendant, the judgment is affirmed.