to that extent the decree must be modified.   If the rabbi is insulted or molested by the defendant, the law provides an adequate remedy, and he must resort to it for his protection.   The legal remedies for such offenses are well understood and are constantly invoked by the wronged party.   Equity will not enjoin the commission of the alleged offense, as is well settled by all the authorities.   Mr. Bispham (Bispham's Equity, 9 Ed., p. 64) says: "Equity is concerned only with questions which affect property, and it exercises no jurisdiction in matters of wrongs to the person or to political rights, or because the act complained of is merely criminal or illegal" (Citing Sparhawk v. Union Passenger Ry. Co., 54 Pa. 401).

The decree must, therefore, be modified by striking therefrom that part thereof enjoining and restraining the defendant from insulting or molesting Rabbi Aaron M. Ashinsky near the premises of the synagogue, or in the public streets.   As thus modified, the decree is affirmed.

---

# Solomon *v.* The Cudahy Packing Company, Appellant.

*Negligence—Master and servant—Safe place to work—Safe instrumentalities of service—Caustic soda—Case for jury.*

1. It is the master's duty to exercise ordinary care and diligence in furnishing his servant with a reasonably safe place in which to do his work, and to furnish reasonably safe instrumentalities of service.   This is a personal and absolute duty that the master owes his servant from the neglect of which, in case of accident, he cannot escape on the ground that the fellow servant rule applies and this is true not only with respect to the things furnished but those which it becomes the duty of the servant to use in the course of his employment.   It is equally the master's duty to warn the servant of any change in the method or appliances whereby the dangers are increased.

2. In an action to recover damages for injuries to plaintiff's eye-

sight where it appeared that plaintiff had been sent for washing soda as on previous occasions; that it was his duty to chop the soda from a barrel, and that defendant's servant without plaintiff's knowledge substituted caustic soda for common washing soda a chip of which flew into plaintiff's eye causing the injury complained of, the case was properly submitted to the jury, and a judgment on a verdict for plaintiff was sustained.

Argued Oct. 10, 1916. Appeal, No. 68, Oct. T., 1916, by defendant, from judgment of C. P. Allegheny Co., April T., 1913, No. 1597, on verdict for plaintiff, in case of Mike Solomon v. The Cudahy Packing Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The facts appear in the following opinion by HAY-MAKER, J., sur defendant's motion for a new trial and for judgment n. o. v.:

The reasons for a new trial are two: (1) the verdict is excessive; (2) the verdict is against the weight of the evidence.

The defendant was in the wholesale meat business; the plaintiff had been employed only about one month and had no previous experience. One of his duties was to wash and scrub cars and a platform where meat was deposited in unloading cars. Previous to his injury he had been sent a number of times to defendant's spice room for common washing soda with which to wash and scrub. That room was kept locked and could be entered only by getting a key from someone in charge. The defendant substituted caustic soda for common washing soda, a few days before the accident, with no notice to the plaintiff of the change. Both were obtained in the same way—by chopping it out of a barrel or drum. On the day of the accident plaintiff was admitted to the spice room by one Delmas and was chopping caustic soda on the first occasion after the change, in the belief that it was the same as previously obtained, when some of the

caustic soda was thrown into his eyes, resulting in the partial loss of his eyesight.   Caustic soda is a compound of unslaked lime and carbonate of soda, boiled together, forming a very strong compound that is very destructive to animal tissue.

The accident caused (1) the loss of five-sevenths of the vision of the right eye, which injury is progressing; (2) the loss of several months' wages; (3) the payment of considerable money for medical purposes, and (4) intense physical pain.   It cannot be said that the verdict was excessive.   Nor can it be said, in our present view of the case, that the verdict was against the weight of the evidence.   Neither was pressed on the argument of the motion or in the brief of counsel.

As to the motion for judgment non obstante veredicto, we declined the point that, "under the evidence and all the pleadings in the case the verdict must be in favor of the defendant."   The defendant was in the wholesale meat business in the Wabash Building in the City of Pittsburgh.   The cars containing meat were either carried or run on elevated tracks to the third floor of the building where the contents were placed upon a platform.   The plaintiff's work was to unload the cars, clean and scrub the platform and empty cars on the third floor, and deliver meat to various customers.   On the same floor, and about twenty feet from the nearest point of the platform, was a small room, kept under lock and key, known as the spice room.   Flagg, the superintendent of the sausage department, was the person ostensibly in charge of that room, and kept the key thereto in his room on the second floor.   Flagg authorized Delmas to procure the key at all times, and the latter was the person practically in charge of that room and to whom employees applied when in need of any material from that room.   Cain was the manager, had entire charge of the plant, knew that Delmas got the key when necessary, from Flagg, and went to that room and either got therefrom or authorized employees to get therein what was

necessary in the course of their employment, and Delmas was the man that he (Cain) generally saw in the spice room when necessary to furnish anything therefrom to the employees.  It seems to have been well known to every one in authority about the plant that Delmas had practically the charge of the spice room, and it will not avail the defendant to invoke the fellow servant rule, because it also appears that, in other respects, Delmas was a common laborer about the plant.  He had control of the spice room and exercised superintendency over it; he directed what and how the employees should obtain materials therefrom.  In exercising control and authority over that room he was, for the time being, and to that extent, in the place of and exercising the same authority as Flagg, the acknowledged superintendent of one of the departments, his immediate superior, and from whom he received orders.  If the directions or orders to the plaintiff, at the time of the injury, had come from Flagg it could scarcely be said that he and plaintiff were fellow servants in that regard, and if Flagg delegated a part of his duties as superintendent to Delmas, and Delmas while discharging them negligently injured the plaintiff, it was a result happening in the course of superintendency, to be visited upon the employer or master.  Be that as it may, this verdict can well be sustained upon another ground of negligence alleged in plaintiff's statement, and supported by the evidence, and that is the negligence of the master in failing to exercise ordinary care and diligence in furnishing the servant with a reasonably safe place in which to do his work and to furnish reasonably safe instrumentalities of service.  To use such care and furnish such instrumentalities is a personal and absolute duty that the master owes his servant, from the neglect of which, in case of accident, he cannot escape on the fellow servant rule, and that applies to not only the things furnished, but those which it becomes the duty of the servant to use in the course of his employment.  It

is equally the master's duty to warn the servant of any change in the method or appliances whereby the dangers are increased.   These principles are too well settled to require a citation of any of the numerous authorities, either text books or reports.   Therefore it becomes wholly immaterial in this case whether the alleged negligence was that of a coemployee or a vice-principal, for the act of the subordinant, constituting the negligence charged, related to a positive duty of the master from which he cannot relieve himself except by performance. The washing material furnished the plaintiff was an instrumentality just as much as any tool the master might have put in his hands with which to do his appointed work, and to direct the plaintiff to use caustic soda, without warning him of its dangerous character, was no less a negligent act than to have put into his hands without instructions, a defective or dangerous tool, of the nature of which the servant had no knowledge.

Delmas denied that he had directed the plaintiff to chop the caustic soda from the barrel, and he testified further that he had warned the plaintiff to keep away, as he didn't know what it was, but that plaintiff disobeyed the instruction.   We instructed the jury that if they believed Delmas in that statement the plaintiff could not recover.

Verdict for plaintiff for $2,000 and judgment thereon. Defendant appealed.

*Errors assigned* were in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*John M. Reed,* with him *Dalzell, Fisher & Hawkins,* for appellant.

*Meredith R. Marshall,* with him *Rody P. Marshall,* for appellee.

PER CURIAM, January 8, 1917:

The judgment in this case is affirmed on the opinion of the learned court below overruling the motions for a new trial and for judgment non obstante veredicto.

---

## Andrews, Executor, Appellant, v. Andrews et al.

*Leases—Oil and gas lease—Construction—Surrender—Presumption—Wills—Intention.*

1. The surrender of an oil and gas lease will not be presumed from the failure of the lessee to explore for oil and gas within a reasonable time from the execution of the lease if it appear that thereby the lessee will be permitted to retain royalties to which otherwise the lessor or his assigns would be entitled.

2. The owner of oil land leased it to three of his younger sons with the exclusive right of drilling for oil and gas, and reserving a certain royalty; the term of the lease was not fixed, but in case oil or gas should be discovered the lease was to run as long as either was found in paying quantities; it was stipulated that one well should be completed within three years unless there should be unavoidable delay or accident, and that the lessee should have the right at any time to surrender the lease; that all the conditions between the parties should extend to their heirs, executors and assigns; thereafter the owner of the land died, having devised the farm to such sons by a will which further provided that "should oil or gas be found on the farm under the now existing lease, and by the lessees or any other lessees the......royalty shall be set aside as part of my estate and be divided among my two eldest sons and my three daughters, in proportion to sums each one has been willed by the foregoing indenture." Eight years after the lease was made and seven years after testator's death the sons completed a well and in subsequent years drilled other wells which resulted in the production of considerable oil. In a suit in equity brought by the executor of the testator for an accounting for oil produced under the lease, defendants contended that, as they were the owners of the farm, they had succeeded to the rights of testator as lessor and that from the lapse of time during which no wells had been drilled, a surrender of the lease would be presumed. The lower court dismissed the bill. *Held,* the plainly expressed intention of testator was to preserve the royalty as part of his estate, to be divided among his children, other than defendants; that to presume