## CHICAGO, R. I. & P. RY. CO. v. CHEEK.

No. 14681—Opinion Filed Dec. 16, 1924.

### 1. Appeal and Error—Review—Sufficiency of Evidence.

In the trial of a law case, where there is any competent evidence in the record which reasonably supports the allegations of the petition, and which would reasonably support a verdict and judgment for the pleader, a demurrer to the evidence, or a motion for a directed verdict, by the adverse party, should be overruled; and the verdict for such party should not be disturbed on appeal because of the insufficiency of the evidence.

### 2. Trial—Province of Judge and Jury—Sufficiency of Evidence.

Whether there is any competent evidence in the record which supports the allegations of the pleader producing the evidence, and whether the evidence adduced will support a verdict in his favor, is a question of law for the court. If, as a matter of law, any such evidence was adduced at the trial, its weight and sufficiency is for the consideration of the jury.

### 3. Master and Servant—Duty of Master—Safe Working Conditions.

Where the relationship of master and servant exists, it is the duty of the master to exercise reasonable and ordinary care to furnish the servant with reasonably safe conditions under which to work; and the employer will be presumed to be familiar with dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged.

### 4. Same—Injuries to Servant—Requisites for Liability.

Where a servant brings action against the master for personal injuries, it is incumbent upon the servant to establish his right to recover by adducing evidence tending to prove, first, that a duty was owing by the master to the servant; second, that such duty had been breached; and, third, that such breach resulted in injury and damages; otherwise a verdict and judgment for the servant against the master cannot be upheld.

### 5. Same—Injuries to Section Hand from Handling Creosoted Crossties.

In an action by a section hand against his employer, railroad company, where there is proof adduced by such servant tending to prove that the employer required the servant and others to handle railroad ties dripping wet with a strong solution of creosote, shown to be known to medical men as a poisonous solution calculated to produce a sore upon the flesh like a burn; and no warning was given of such danger; and no tools were furnished to handle the ties reasonably calculated to protect the servant from getting the creosote upon his flesh; and the servant did not know of the danger from handling the creosoted ties; and the servant got the creosote upon his person and a sore like a burn was produced, resulting in loss of time, doctor and medical bills incurred, and physical pain and suffering endured, such evidence presented a question of fact for the jury to determine whether or not a duty was owing by the master to the servant, and if so, whether such duty had been breached by the master, resulting in injury and damage.

### 6. Same.

Where the defendant, railroad company, required the plaintiff, its servant, to handle with his hands, crossties dripping wet with a strong solution of creosote, and no warning was given of the danger in getting the ties against his person in handling them; and the servant had no knowledge of the danger in so handling the ties, the servant had a right to presume that it was safe to handle the ties.

### 7. Same — Contributory Negligence—Federal Employers' Liability Act.

In a personal injury case brought by a servant against a master and the relationship of such master and servant is controlled by the federal Employers' Liability Act (Act of April 22, 1908, chap. 149, U. S. Comp. Stats., sections 8657-8665), contributory negligence does not constitute a defense, but should be considered only in mitigation of damages; and the defense of assumption of risk is controlled by the rule of the common law.

### 8. Same— Assumption of Risk—Question for Jury or Court.

Under the Oklahoma law, the defense of assumption of risk is made a question of fact for the jury; but the common-law rule is that the servant assumes the risks incident to the business in which he is engaged of which he knew, or which should be known to a reasonable person by the exercise of ordinary care; and where there is no substantial conflict in the evidence and reasonable men generally would infer that the servant knew the hazard or danger, or if a reasonable person, by the exercise of

ordinary care, could have known of such hazard or danger, a question of law is presented for the court; but where there is conflict in the evidence as to such defense, and where reasonable men might draw different conclusions as to the knowledge of the servant, or what might or should be known to a reasonable person in the exercise of ordinary care under the circumstances presented, a question of fact is presented by the evidence upon such defense, and is for the consideration of the jury.

### 9. Same — Contributory Negligence — Instruction—Harmless Error.

In a suit by a servant against the master, where the relationship of the parties is controlled by the federal Employers' Liability Act, and contributory negligence of the servant is not pleaded by the master in mitigation of damages, and no proof of contributory negligence is offered in the case by the master, and it does not appear from the servant's evidence, by inference or otherwise, that the servant was contributorily negligent, an instruction which submits to the jury the defense of contributory negligence is not prejudicial to the rights of the master.

### 10. Same—Assumption of Risk — Instruction.

In the trial of a personal injury case between a servant, plaintiff, and the master, railroad company, defendant, where the relationship of the parties is controlled by the federal Employers' Liability Act, and no evidence is offered by the master upon the defense of assumption of risk, and the evidence offered by the servant is such that reasonable men would probably draw different conclusions and inferences therefrom as to whether the servant knew of the dangers incident to his employment, or whether a reasonable person in the exercise of ordinary care should have known of such dangers, an instruction, which submits to the jury the defense of assumption of risk according to the rule of the common law, is not erroneous.

### 11. Same—Sufficiency of Instructions.

In the trial of a personal injury case, where the evidence offered by the plaintiff substantially conforms to the allegations of the petition, and no proof is offered by the defendant, and the court, in an instruction, in substance and effect, advises the jury in a manner easily understood by men of ordinary intelligence, of the allegations of negligence set out in the petition, and submits the matter to the jury to determine whether or not the things complained of and testified about amount to negligence under the circumstances presented, and whether or not the negligence, if such they find it to be, was the direct and proximate cause of the injury complained of in the testimony, if any injury had occurred, and advises the jury that they must be convinced as to the negligence, the injury, and the proximate cause by the fair preponderance of the evidence before finding for the plaintiff, such instruction is not so erroneous as to require a reversal of the plaintiff's judgment because of being contrary to the law.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Hughes County; J. J. Smith, Assigned Judge.

Action by Joseph Cheek against the Chicago, Rock Island & Pacific Railway Company, a corporation. Judgment for plaintiff, and defendant appeals. Affirmed.

C. O. Blake, W. R. Bleakmore, A. T. Boys, and W. F. Collins, for plaintiff in error.

Diamond & Orr, for defendant in error.

Opinion by SHACKELFORD, C. The plaintiff in error was the defendant below, and the defendant in error was the plaintiff. The parties will be referred to herein as plaintiff and defendant as they appeared in the trial court.

The plaintiff seeks to recover damages for personal injury. In substance and effect the plaintiff alleges that he was employed by the defendant and was working as a section hand upon the defendant's railroad; that on or about July 26, 1922, the defendant required the plaintiff to handle certain cross-ties for use upon the road, which had been made wet with a strong solution of creosote; that the solution of creosote was dangerous and poisonous, and was likely to inflict injuries where it should come in contact with the skin and flesh; that plaintiff had had no experience in handling creosoted railroad ties in hot weather, and did not know of the dangers incident to getting the creosote upon the skin and flesh, and that defendant negligently failed to warn him of the danger and directed the handling of the ties without the use of any tools or equipment to prevent getting the creosote upon his person; that he handled the ties with the effect that he got the creosote solution upon his person and particularly upon his private genital organ, with the result that he had to have medical treatment at expense to him and loss of time; and was made sore and suffered much pain and distress and has been left in a scarred condition which makes procreative intercourse painful, and that the injury is permanent. That he has sustained damages as follows: Loss of time, $100; doctor and medical bills, $46.90; pain and suffering, $2,850; a total of $2,996.90, for which he prays judgment.

The defendant answered by general denial, and that the injury was caused by the plaintiff's own lack of care, and negligence; that the plaintiff knew of the danger in handling the ties, if any existed, and assumed the risk, and that plaintiff and defendant were engaged in interstate commence, and the duties and obligations of the parties are controlled by the federal Employer's Liability Act. The plaintiff replied by general denial.

The cause was tried to a jury, resulting in a verdict and judgment for the plaintiff in the sum of $2,000. The defendant appeals, and presents its assignments of error as follows:

(1)  The verdict is not sustained by sufficient evidence.

(2)  The verdict is contrary to law.

(3)  The trial court erred in overruling the defendant's demurrer to the evidence.

(4)  The trial court erred in refusing to instruct the jury to return a verdict for defendant.

The first, third, and fourth propositions raise the question of the sufficiency of the evidence to support the verdict and judgment. The rule is that if there is any competent evidence in the record which reasonably supports the allegations of the plaintiff's petition, and which would reasonably support a verdict for the plaintiff, defendant's demurrer to the plaintiff's evidence, and defendant's motion for a directed verdict should be overruled. It is a question of law for the court to determine whether or not there is competent evidence in the record which reasonably supports the allegations of the petition and the verdict and judgment. If there is such evidence, the weight to be given thereto is for the jury. If there is such evidence in the record, the verdict and judgment should not be disturbed on appeal because of the insufficiency of the evidence. No evidence was introduced in this case by the defendant, and the cause was submitted to the jury upon the evidence introduced by the plaintiff.

The plaintiff's evidence tends to prove that plaintiff was employed by the defendant as a section hand on its railroad in the vicinity of Holdenville, in Hughes county, Okla.; that on or about the 26th of July, 1922, the plaintiff, together with some other section hands, were required to load onto some flat cars a lot of sap pine crossties which had been coated and were wet with a strong solution of creosote; that in handling the ties plaintiff and his coworkers were furnished with one hook, and were under the necessity for the most part, of taking the ties in their hands, and in lifting them, the ties or some of them came in contact with the plaintiff's body, and the clothes he was wearing, and the solution wet him through to the skin and he observed a burning sensation, and when he went home he found his private organ and his groins so covered with the creosote solution that such parts of his person were blackened with it. He washed and then used cold cream, but the condition of the parts grew worse and he had to have medical treatment. A bad sore was produced upon the genital organ, which has left a tender, scarred condition which is very painful, and the scarred membrane breaks and bleeds when he has an erection, and intercourse for him has been rendered painful. The evidence tends to show that the condition is permanent. That the creosote solution on the crossties was a poisonous solution and calculated to produce such effect; that the plaintiff had never handled crossties saturated with creosote to the dripping point, in hot weather, until this time, and had no knowledge of the danger of getting the creosote upon his person; that no warning was given him by the defendant that there was danger in coming in contact with this wood preserving poison. That at times the suffering su perinduced by this active poison was so intense that he could not help crying. The plaintiff was under treatment for 30 days or more; and lost a month or more from work, and still suffers with the injury and perhaps will never entirely recover. It was further shown by the evidence that it is well known to doctors generally that a creosote solution contains an active poison. dangerous to human flesh.

It has been held by this court in many cases that the employer owes the employe the duty to use ordinary care to furnish him a reasonably safe place to work, and reasonably safe equipment and appliances to work with. And, where such duty has been breached and injury and damage results without fault of the employe, the employer is liable. So often has this been said that it has became axiomatic. It seems to need no citation of authorities.

In Chicago, R. I. & P. Ry. Co. v. Rogers, 60 Okla. 249, 159 Pac. 1132, this court said:

"It is the duty of the master to furnish his servant with a reasonably safe place to work and with reasonably safe tools and appliances with which to work, taking into consideration the nature and character of

the work to be performed and the dangers therefrom, and this duty cannot be delegated by him so as to relieve him of liability for injuries resulting from its violation."

It is just as familiar a rule that for the plaintiff employe to recover damages against the defendant employer, it is incumbent upon the plaintiff to show that the defendant owed him a duty which had been breached resulting in injury and damage. St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083; Midland Valley R. Co. v. Williams, 42 Okla. 444, 141 Pac. 1103. The plaintiff was one of defendant's employes, therefore the duty existed to use ordinary care to furnish him reasonably safe equipment to work with. Was the employer, defendant, in the exercise of ordinary care for plaintiff's safety in sending the plaintiff and others to handle crossties creosoted with a strong solution of creosote, well known to medical science to be poisonous and calculated to produce sores upon the flesh like a burn when it comes in contact with the flesh, with no means of handling the ties except with their hands, and without a word of warning that danger lurked in the solution dripping from the ties? We think not. The plaintiff himself said he did not know of the danger, and his evidence is in no way contradicted. When no word of warning was given by the master, the employe had a right to assume there was no cause for extraordinary precaution when he himself knew nothing of the danger. It was held in Wagner v. Jayne Chemical Company, 147 Pa. St. 475, 30 Am. St. Rep. 745, that:

"An employer is bound to exercise reasonable precaution against injury to his employes, while in his service and obeying his orders. He must provide suitable instruments and means with which to carry on the business which he sets them to do, and must warn them of all dangers to which they will be exposed in the course of their employment, except those which the employe may be deemed to have foreseen as necessarily incidental to his employment, or which may be open and obvious to a person of his experience and understanding, or such as the employer cannot be deemed to have foreseen."

Were the dangers of handling the creosoted ties obvious, when the employe did not know of the dangers, and when he had no experience in handling ties under the circumstances presented? The testimony made it a question of fact to say the best for the employer. Can it be said that the dangers of handling the creosoted ties could not be deemed to have been foreseen by the employer? It seems to be well known to medi-

cal science that strong solutions of creosote are poisonous and calculated to produce sores on the flesh like a burn. The defendant, employer, knew this fact, or should have known it. It might be said again that at best for the employer, it was a question of fact. In Wagner v. Jayne Chemical Company, supra, the court held that:

"Employer will be presumed to be familiar with dangers, latent as well as patent, ordinarily accompanying the business in which he is engaged."

When the employer, railroad company, uses a chemical compound which is well known to medicial men to be poisonous, for the purpose of preserving its wood railroad ties used in building or repairing its tracks, it takes notice of the dangers incident to handling such ties; and owes its employes the duty of warning them of any such danger; and when no warning is given, the employe has a right to assume in the absence of knowledge on his part, that it is safe to handle the ties.

In Collins v. Pecos & N. T. Ry. Co., 212 S. W. 477, the Texas court held:

"Where there is reason to anticipate some injury may result to the servant, the master must exercise such care as will prevent the injury, and a failure to do so is actionable negligence, if injury follows the breach of duty."

"In action by section foreman for injury to his hands and face from handling ties wet with a poisonous mixture known as creosote, whether the permanent injuries suffered were the natural and proximate result of defendant's negligence in not warning him of danger, held, on the evidence, a question for the jury."

In Louisville & N. R. Co. v. Wright, 183 Ky. 634, 210 S. W. 184, the Kentucky court held:

"If a master was negligent in not warning a servant of the danger of handling creosote servant was entitled to recover full damages suffered, although he was peculiarly susceptible to such poisoning."

"In action by servant for damages for personal injuries occasioned by creosote poisoning from handling ties, whether servant knew of danger in handling such ties held for jury."

In Gulf, C. & S. F. Ry. Co. v. Smith, 148 S. W. 820, the Texas court held that:

"The proximate and natural consequences of an act of negligence are always deemed foreseen, though the precise injury may not have been anticipated."

In Thompson v. United Laboratories Co., 221 Mass. 276, 108 N. E. 1042, is was held that:

. "An employer, engaged in a business inherently dangerous to the life and health of employes, is bound to become informed of those matters of scientific knowledge possessed by men of general education and information relative to the danger and hazard of the business."

"To render an employer liable for injuries, it is not necessary that the person to be harmed or the form which the injury shall assume should have been foreseen; it being enough that it appears, after the happening of the injury, to have been a natural and probable consequence."

. The defendant insists, however, that this case is controlled by the federal Employer's Liability Act (Congressional Act of April 22, 1908, c. 149, U. S. Comp. Stats. sections 8657-65), since the plaintiff and defendant were engaged in interstate commerce, and the defendant cannot be held liable to plaintiff under the act.

The state rule is that the defenses of contributory negligence and assumption of risk present questions of fact for the jury, and not questions of law for the court. The federal Employer's Liability Act takes away contributory negligence as a defense; but it is to go in mitigation of damages only. Under the congressional act assumption of risk as a defense is controlled by the common law rule. The common-law rule is that the employe assumes the risks of his employment which are known to him or which could have been known by the exercise of ordinary care by a person of reasonable prudence and diligence in like circumstances; and where there is no substantial dispute in the evidence, from which different inferences may be drawn by reasonable men that the employe knew of the risk, or by the exercise of ordinary care could have known of it, a question of law is presented for the court, and not a question of fact for the jury. This rule seems to be supported by Kansas City, M. & O. Ry. Co. v. Roe, 74 Okla. 238, 180 Pac. 371.

In this case the defense of contributory negligence is not pleaded by way of mitigation of damages. The defense tendered in the answer is that defendant was not negligent in the matter; and if the plaintiff suffered the injury complained of it was due wholly to the plaintiff's own negligence and want of care. There was no proof offered on the part of the defendant. That being so there is no question of contributory negligence in this case, unless it is established or to be inferred from the plaintiff's evidence. We have carefully examined the evidence adduced at the trial and find ourselves unable to say that contributory negligence

was established by or to be inferred therefrom, so as to require the matter to be submitted to the jury by way of mitigation of damages. The defendant tendered the defense of assumption of risk, but after examining the plaintiff's evidence we are unable to say that all reasonable men would agree that the plaintiff knew, or in the exercise of ordinary care should have known that there was a lurking danger in the creosote solution with which the crossties had been coated. Unless we could so hold as a matter of law, the defense tendered becomes a question of fact for the jury, even if the common law rule should apply.

In Kansas City M. & O. Ry. Co. v. Roe, supra, this court held:

"On the issue of assumption of risk by a servant who has sustained injuries, where the evidence is harmonious and consistent, and the circumstances are such that all reasonable men must reach the same conclusion, the question whether the plaintiff assumed the risk is one of law for the determination of the court; but where the facts are controverted, or are such that different inferences may be drawn therefrom, the question as to the assumption of the risk should be submitted to the jury under proper instructions from the court."

In Thompson v. United Laboratories Co., supra, it was held:

"In an action for injuries to an employe poisoned by arsenic in rat poison which she was placing in cans, evidence held to make a question for the jury as to whether she assumed the risk.

"Risks which are obvious only to those possessing scientific knowledge are not assumed."

In Pigeon v. W. P. Fuller & Co. (Cal.) 105 Pac. 976, the court held that:

"A servant does not assume the risk unless he thoroughly comprehends the danger and voluntarily undertakes such danger and risk and he does not assume the risk of hidden dangers which are to the master's knowledge not apparent to him."

"A servant in a white lead manufactory could not be held as a matter of law to have known that the inhalation of the fumes and dust had a tendency to produce lead poisoning, with loss of teeth, paralysis, and derangement of the digestive organs, so as to be charged with assumption of the risk."

There is no dispute in the evidence that the plaintiff sustained the injury, and the evidence tends to sustain the conclusion that the injury was the direct and proximate result of the creosote poisoning. There was enough in the evidence of plaintiff to take the case to the jury, whether the state rule as to assumption of risk or the com-

mon-law rule under the federal Employer's Liability Act be applied.

The defendant complains that the verdict is contrary to the law. Under this assignment it complains of the giving of one instruction—number 7 of the court's instructions. The first part of the instruction recites, in substance, the allegations of the petition, and then says:

"You are instructed by the court that unless you find and are satisfied from the fair weight and preponderance of the evidence in this case that the plaintiff was injured at the hands of the defendant company, and that one or all of these matters and things hereinabove enumerated and alleged by plaintiff in his petition as negligence on the part of the defendant company was or were the direct or proximate cause of the injuries sustained by the plaintiff, then the plaintiff would not be entitled to recover in this case and your verdict should be against the plaintiff and in favor of the defendant. * * *"

The reference made to what is alleged is that plaintiff was required to handle the ties wet with a strong poisonous solution of creosote without being warned of the danger, and without being furnished proper tools to handle the ties. The proof tended to show that the ties were dripping wet with the strong poisonous solution of creosote, and the bunch of section men were furnished with only one hook to use in handling these ties. The effect of the instruction was to tell the jury that unless it concluded from the fair weight of the evidence that the company was negligent in failing to warn plaintiff of the danger in handling the creosoted ties or in failing to furnish sufficient hooks to handle the ties without plaintiff getting the creosote solution upon his person, or if the jury was not satisfied by the fair preponderance of the evidence that such conduct upon the part of defendant was the direct and proximate cause of the injury, then the plaintiff could not recover and the verdict should be for the defendant. The remaining part of the instruction is as follows:

"I you find and are satisfied from the fair weight and preponderance of the evidence in this case that the plaintiff was injured at the hands of the defendant company, and that one or all of these matters and things hereinbefore enumerated and alleged by the plaintiff in his petition, as negligence on the part of the defendant company, was or were the direct or proximate cause of the injuries sustained by the plaintiff and that the plaintiff was not guilty of contributory negligence upon his part, as alleged and set forth in the answer of the defendant company, and that the defects in

and of the tools and equipments, if you find from the evidence any such defects existed, and the risks and dangers incident to the handling of creosoted ties, if you find any such dangers to have existed, were not assumed by the plaintiff by reason of his employment, as elsewhere defined to you in these instructions, then and in that case the plaintiff would be entitled to recover and your verdict should be in his favor and against the defendant company."

This part of the instruction has the effect of presenting the converse view; that is, if the jury should be convinced by the fair preponderance of the evidence that the things alleged as negligence or some of them, had occurred and were negligence, and were the direct and proximate cause of the injury complained of, the verdict should be for the plaintiff, unless the jury should find that the plaintiff was contributorily negligent, or had assumed the risks incident to handling the creosoted ties without proper tools.

It is not easy to see how the jury could have been misled by this instruction to the prejudice of the defendant. It seems plain from this instruction that the court was saying to the jury that if they found by the fair preponderance of the evidence that defendant was negligent in requiring the plaintiff to handle the creosoted ties without warning of danger, or without furnishing sufficient hooks, which, either one or both amounted to the proximate cause of such injury as resulted, if any, the plaintiff would be entitled to recover unless the jury should find that the plaintiff was contributorily negligent, or had assumed the risk as defined in another instruction. We have examined the instruction upon the matter of assumption of risk. The instruction submits the matter of assumption of risk according to the rule of the common law, that is, that plaintiff assumed the risks incident to the business in which he was engaged and of which he knew, or, by the exercise of ordinary care could have known. We have seen that under the evidence the assumption of risk was a question of fact, if a question at all, for the consideration of the jury. The question of assumption of risk, if there was any such issue in the case, was properly submitted both under the state law and under the rule which obtains where the parties are engaged in interstate commerce.

In this case we have seen that the defense of contributory negligence as a defense, or in mitigation of damages, was neither pleaded nor proven. It is doubtful if the infer-

ence of assumption of risk could be drawn from the evidence, and certainly not as a matter of law. It is doubtful if the issues of contributory negligence and assumption of risk should have been submitted to the jury by the instructions, but to submit such issues in the instructions was neither harmful nor prejudicial to the defendant, and furnishes no cause for complaint by the defendant. If there was any mistake in submitting such issues to the jury, it was in defendant's favor and prejudicial to the plaintiff. The instructions otherwise seem well nigh technically correct.

We have carefully studied the entire record. There was enough in the plaintiff's evidence to go to the jury upon the question of the defendant's negligence. The court's instructions covered the case in a manner which could be easily understood by men of ordinary intelligence, and sufficiently declared the law of the case. That the plaintiff sustained injury is undisputed, and the evidence is convincing that the injury was the direct and proximate result of the defendant's failure to warn the plaintiff of the danger incident to handling the creosoted ties and the failure to furnish sufficient hooks to handle them, without plaintiff coming in contact with the creosoted ties.

The defendant also contends that the verdict is excessive. We have examined the evidence as to the extent of the plaintiff's injury and are clearly of the opinion that the verdict is not the result of passion or prejudice, and is not excessive.

There is no error in this record requiring a reversal of the judgment. We recommend that it be affirmed.

By the Court: It is so ordered.