Rockingham,  
Dec. 6, 1932.

JAMES W. HARVEY *v.* JAMES L. WELCH.

*William H. Sleeper* and *John W. Perkins* (*Mr. Perkins* orally), for the plaintiff.

*Sewall & Waldron* and *George R. Scammon* (*Mr. Sewall* orally), for the defendant.

BRANCH, J. The issue of the defendant's fault was for the jury. Having undertaken to use in his business a substance admittedly known by him to be poisonous, the defendant owed to the plaintiff a duty to use reasonable care to warn and instruct him with reference to the dangers incident to such use and to furnish him with a reasonably safe place in which to work. There was enough evidence to justify the conclusion that the defendant failed to perform either of these duties. It was conceded that no warning as to the danger of oxalic acid poisoning was given to the plaintiff and that he was not instructed to take any precautions in using the material furnished to him. It might also be found that the means adopted by the defendant to carry off the vapors which resulted from the boiling process were inadequate.

The argument that the defendant had no actual knowledge as to the physiological effect of oxalic acid fumes, if well founded in fact, is not effective in law to absolve him from liability. Being under a positive duty to exercise care for the safety of his servant, he was bound to make reasonable inquiry for the purpose of informing himself of the natural consequences of using the material which he furnished. A master "must take into account the properties of such substances as he employs for the purposes of his business, and the operation of familiar physical laws upon these substances." 3 La-

batt, Master & Servant, *s.* 1041; 39 C. J. tit, M. & S., *s.* 604. Therefore he is chargeable with knowledge of the fact "that the fumes given off by various substances used in industrial processes are poisonous to persons who inhale them." 3 Labatt, M. & S., *s.* 1041 and cases cited; Note to *Pinkley* v. *Railroad* (246 Ill. 370) in 35 L. R. A. (N. S.) 679; Note to *Zajkowski* v. *Company* (258 Fed. Rep. 9) in 6 A. L. R. 348, 355; *Gobrecht* v. *Beckwith*, 82 N. H. 415, 420; *Thompson* v. *Company*, 221 Mass. 276, 280; *Mooney* v. *Company*, 317 Mo. 1255; *Baumgartner* v. *Railroad*, 292 Pa. St. 106.

Although the defendant was chargeable with knowledge of the possible deleterious effects of oxalic acid vapors, the plaintiff was not. He was entitled to assume that the instrumentalities and materials furnished by the defendant were reasonably safe to use. *Whitcher* v. *Railroad*, 70 N. H. 242, 247; *Thompson* v. *Company*, 71 N. H. 174, 176; *Kruger* v. *Company*, 84 N. H. 290, 297. Hence it cannot be held as a matter of law that the plaintiff assumed the risk of injury from this cause.

The defendant argues that the plaintiff learned early in May, 1929, that he was suffering from the effects of oxalic acid poisoning and that he was guilty of contributory negligence in continuing his work after that time. This argument finds no basis in the testimony. Although a physician testified that upon May 7, 1929, he made a diagnosis of oxalic acid poisoning, he did not say that he informed the plaintiff of his conclusions, and the plaintiff, in his testimony, denied that he had any knowledge as to the cause of his trouble. The extent of the plaintiff's knowledge and the reasonableness of his conduct in the light thereof were matters for the jury to pass upon. From the foregoing conclusions it follows that the motions for a nonsuit and directed verdict were properly denied.

There was evidence that before the defendant embarked upon the business of cleaning radiators, he sent his foreman, Mr. Young, to Boston for the purpose of familiarizing himself with the methods used for that purpose in the factory branch of the United Motors Service. There was also evidence that the cartons in which oxalic acid was delivered at the defendant's plant in Portsmouth were marked "poison." In his argument to the jury, plaintiff's counsel asserted that "Mr. Young testified under oath that while he was there that week he knew that that material where those men were working was marked poison." To this statement the defendant claimed an exception, and plaintiff's counsel then continued: "That is the evidence in this case, gentlemen." The assertion that Mr. Young saw that the material

used in Boston "was marked poison" was later repeated subject to exception, and returning to the subject a third time, plaintiff's counsel said, " . . . as I recall it in refreshing my mind a little upon it, that Harold Young testified that he went to the United Motors Service place down there to Boston and that he was there a week and that the cartons were marked 'poison' down in Boston." Counsel also stressed the rule that "the employer of labor cannot delegate a duty to furnish a safe work place; he can't throw the responsibility off," and argued that if the defendant "relied on Harvey and Harvey failed to do something that should have been done and it is a positive duty, why then as a matter of law he was negligent just the same." Here counsel obviously fell into the error of using the name Harvey when he meant to say Young, a mistake which occurred repeatedly in other portions of his argument.

It therefore appears that plaintiff's counsel vigorously asserted that the actual knowledge possessed by Young was, in law, the knowledge of the defendant and that Young admitted in his testimony that he acquired in Boston knowledge of the poisonous character of the material used. This was a complete perversion of Young's testimony. He repeatedly denied upon the stand that he learned anything about the poisonous nature of oxalic acid while he was in Boston, and testified that he did not "recall of seeing the carton they took the oxalic acid from" in Boston. Here we have a palpable misstatement of evidence upon a vital point in the case reiterated by counsel after exception had been taken and impliedly sanctioned by the action of the court in allowing an exception. *Salvas* v. *Cantin*, 85 N. H. 489; *State* v. *Wargo*, 83 N. H. 532, 535. Under these circumstances the verdict must be set aside. *Haselton* v. *Maser*, 83 N. H. 498, 500 and cases cited.

The other exceptions argued by the defendant are not likely to arise at another trial and have not, therefore, been considered.

*New trial.*

All concurred.