## JULIA SYMONS v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 19, 1940.

No. 32,374.

[1]Reported in 293 N. W. 303.

*A. L. Janes* and *J. H. Mulally,* for appellant.

*F. T. Cuthbert* and *W. E. Rowe,* for respondent.

PETERSON, JUSTICE.

This action for wrongful death is brought under the North Dakota statute, 2 Comp. Laws North Dakota, 1913, §§ 8321-

8324, which is similar to other acts providing for recovery in such cases, except that the maximum amount recoverable is not limited. Section 8322 provides: "In such actions the jury shall give such damages as they think proportionate to the injury resulting from the death to the persons entitled to the recovery."

The decedent was the husband of plaintiff, who brings this action on behalf of herself and their three children and his adopted daughter prior to his marriage to plaintiff.

Plaintiff claimed that decedent was employed as a clerk by defendant in its storerooms at Grand Forks, North Dakota, working on a night shift; that it was part of his duties to keep the storerooms clean; that one of these rooms known as the oil room was used for the storage and distribution as needed of oil, paint, carbon tetrachloride, and other supplies; that defendant negligently permitted plaintiff to use carbon tetrachloride to clean the floors, without warning him that it gave off deadly suffocating gases when used where the heat was such as it was in the oil room; and that as a result of such use while cleaning the floors on November 23, 1935, decedent died of suffocation from inhaling the gas given off by the carbon tetrachloride.

The defense was that defendant neither authorized the use of the carbon tetrachloride for floor cleaning nor furnished the same to decedent for that purpose; that if decedent used it on the night in question such use was unauthorized and unknown to defendant; that decedent on the night in question was using the carbon tetrachloride not to clean the floor of the oil room, but to clean his sheepskin-lined overcoat; that decedent assumed the risk of using the substance; and that he was guilty of contributory negligence.

It is not disputed that decedent was employed by defendant; that he died in the oil room on the night of November 23, 1935, from inhaling carbon tetrachloride gas; that death occurred during his regular shift that night; that decedent was then earning $140 per month; that he was 67 years of

age; that he was in good health and of good habits; and that he left him surviving his widow of the age of 55 years and three sons of the ages of 16, 14, and 8, who were dependent on him. The adopted daughter apparently was not a dependent. Decedent at the time of death had a life expectancy of 10 years, and all his dependents had an expectancy in excess of that.

Plaintiff and the two older boys had been with decedent when he cleaned the oil room with carbon tetrachloride something like 15 or 17 times between October, 1932, and November, 1935. The storerooms were open for business, and decedent filled requisitions for other employes while doing such cleaning. The oil room was hot, the temperature being 85 to 90 degrees Fahrenheit. Because of that fact, it was decedent's invariable custom to strip down to his underwear and shoes and stockings while cleaning the oil room. He always removed the contents from his clothes before taking them off. Then he drew off a quantity of the carbon tetrachloride from a tank into a pail called the dope bucket. Mrs. Symons thought he used from one-half to three-fourths of a bucket each time. That amounted to one and seven-eighths to three gallons. She said that she did not know just how much he used, but that she could see the liquid in the bucket. The two boys estimated that he used about two or three quarts at a time. He cleaned the floor by moistening some waste with the liquid and then getting down on his hands and knees and rubbing it on the floor to remove oil and paint spots. By the time he completed the job the contents of the bucket became very dirty. He then placed the bucket and the waste in it under the faucet of the tank in which the liquid was kept.

There was evidence that carbon tetrachloride is a noninflammable solvent of oils and fats and that it is used to remove oil, grease, paint, and similar substances and as a fire extinguisher. It gives off a vapor which increases in amount with increase in temperature. The vapor is heavier than air and has a tendency to seek low levels. Thus it

might be inhaled by one down on the floor as decedent was when he cleaned with it. Like chloroform, to which it is chemically akin, it is an anesthetic. When inhaled it causes suffocation and death. Its qualities are well known to the learned and trained, but not commonly known to the unlearned and untrained. Decedent was not shown to have known or understood the chemical qualities of carbon tetrachloride.

Defendant not only denied all authorization, express or implied, of decedent's use of the carbon tetrachloride, but showed also that it provided as floor cleaners trisodium and Gold Dust to be used in water solution. It also claims that decedent's use of the carbon tetrachloride was contrary to orders that no supplies were to be used without a requisition. For the years 1934 and 1935, requisition slips purporting to cover all the carbon tetrachloride used were produced which showed that none was used for cleaning the oil room floor. The amount received in store for 1934 was 124 gallons against which requisitions were issued for 108¼ gallons, and for 1935 117 gallons with requisitions for 94 gallons. Thus 63 quarts were unaccounted for in 1934 and 92 quarts in 1935. No records to show the amount of trisodium and Gold Dust received and requisitioned were produced. There was evidence that trisodium was used by decedent to clean the wooden floor in other rooms without requisitions for what he used.

Furthermore, defendant contended that the evidence showed that decedent washed his coat and not the floor with carbon tetrachloride. His coat was found on the tank where the liquid was kept. The dope bucket was found under the faucet, but without any waste in it. It is argued that the only inference is that he cleaned his coat in the pail. The evidence is not clear that the pail was large enough for that purpose. The absence of waste may be accounted for by the fact that an employe took the pail outside for some purpose not disclosed. Some witnesses said that the coat was damp,

"wet like." Others positively denied this. Weiss, one of defendant's witnesses, said that he could tell that the coat had been cleaned because it appeared to be cleaner than when he last saw it. But this was the first and only time decedent ever wore this coat to work, it having just prior to the accident been given to him by a neighbor. Then there was evidence that whenever decedent's coats were cleaned plaintiff did the job herself with five gallons of high-test gasoline obtained for the purpose. She and the two older boys testified that the coat had not been cleaned and that it could not have been cleaned in the pail. Significant, too, is the testimony of Weiss that he examined the floor the next morning and that he found it nice and clean.

Finally, it was claimed by defendant that the gloss of the paint on the floor was not removed and that continued use of the carbon tetrachloride would have removed the gloss. But the evidence did not show that cleaning the floors in the manner employed by decedent would necessarily remove the gloss, and there was no evidence as to when or how often the floor had been painted.

The case was submitted to the jury on the theory that plaintiff was entitled to recover, if at all, only for defendant's failure to exercise reasonable care in providing the decedent with safe means and place to do his work and that defendant was not liable if decedent assumed the risk or was guilty of contributory negligence. Plaintiff had a verdict of $7,500. Defendant appeals from the order denying its motion in the alternative for judgment or a new trial.

The questions raised by the numerous assignments of error are that no actionable negligence was shown, that decedent's assumption of risk and contributory negligence appear as a matter of law, and misconduct of plaintiff's counsel at the trial.

■ Much emphasized is defendant's claim that it did not authorize decedent to use the carbon tetrachloride for floor cleaning. There is an absence of express authorization. But

the authorization need not be express. The case of Haluptzok v. G. N. Ry. Co. 55 Minn. 446, 57 N. W. 144, 26 L. R. A. 739, is decisive on this point. In that case the question was whether a station agent had authority to employ one O'Connell, whose negligent act caused an injury to plaintiff's minor son. O'Connell had been assisting the station agent for about ten days prior to the accident in consideration of his being permitted to use and practice on the telegraphic instruments in the station. For a year or more prior to the accident another helper worked under the same arrangement. There was evidence that the arrangement continued for some time after the accident. The evidence showed conclusively absence of express authority on the part of the station agent to hire helpers. We held that express authority was not necessary, that implied authority sufficed. Mr. Justice Mitchell said [55 Minn. 450]:

"Such authority may be implied from the nature of the work to be performed, and also from the general course of conducting the business of the master by the servant for so long a time that knowledge and consent on the part of the master may be inferred."

Here there was not only continuance of decedent's practice for a year, but for several years. Other employes came to the oil room and had opportunity to see him. His acts were public so far as defendant was concerned. More than that, defendant's attention was directed to the large amounts of carbon tetrachloride used as well as to those which were not accounted for. The evidence showed that it cost $1.12 per gallon. The system of accounts and requisitions were designed to prevent theft and unauthorized use of this valuable liquid. The evidence does not show that decedent used it every time he cleaned the floors. Some 15 to 17 instances were shown in a period of three years. Probably he used it more often. The 63 quarts missing for 1934 would be enough for about 20 or 30 floor cleanings, and the 92 quarts missing in 1935

for about 30 to 45.   Here the course of conducting defendant's business as well as its knowledge presumably derived from keeping close check on the use made of the carbon tetrachloride permits the inference that defendant knew that decedent was using the amounts for which there was no account for cleaning the oil room floor.

■   The evidence made a fact question for the jury whether decedent was acting within the scope of his employment in cleaning the floor or his own personal purposes in cleaning his coat.   There is so much evidence to support either view that it was peculiarly for the jury to resolve the fact.   On the one hand there is evidence that decedent was stripped as he usually was when he cleaned the floor, and that the floor had been cleaned.   The evidence that he was then cleaning his coat is inconclusive, for the reasons, among others, that no reason was shown why decedent should have stripped as he did to clean the coat or why he should have cleaned it in the hot oil room; that it was doubtful whether he could clean the coat in the dope bucket and still more doubtful whether he would clean his coat in view of the fact that his wife always had cleaned his coats for him.   Where the evidence of a fact is conflicting, the issue is for the jury. Benson v. Northland Transportation Co. 200 Minn. 445, 453, 274 N. W. 532.

■   The master is under the duty of warning his employes of dangers incident to the work of which he should be aware because of his superior position but which are unknown to them.   His duty is to exercise reasonable care for the safety of his servant.   He is bound to make reasonable inquiry for the purpose of informing himself of the natural consequences of using the materials which he furnishes.   He is chargeable with the knowledge of the properties of such materials and the operation of natural laws on them.   Where reasonable inquiry would disclose that materials furnished by the master to the servant, with which to do his work, give off harmful fumes, the master may be held liable for

negligence. L. & N. R. Co. v. Gilliland, 220 Ky. 431, 295 S. W. 422, 53 A. L. R. 386 (formalin); L. & N. R. Co. v. Wright, 183 Ky. 634, 210 S. W. 184, 4 A. L. R. 478 (creosoted ties); Watkins v. N. Y. N. H. & H. R. Co. 290 Mass. 448, 195 N. E. 888 (a compound containing a large amount of caustic soda); Harvey v. Welch, 86 N. H. 72, 163 A. 417 (oxalic acid); C. R. I. & P. Ry. Co. v. Cheek, 105 Okl. 91, 231 P. 1078 (creosoted ties); Meany v. Standard Oil Co. (N. J. Sup.) 55 A. 653 (gases in a stillhouse); Solomon v. Cudahy Packing Co. 256 Pa. 19, 100 A. 490 (caustic soda substituted for washing soda); annotations, 53 A. L. R. 392, 4 A. L. R. 488, 35 L. R. A. (N. S.) 679, 39 C. J. p. 511, § 620, notes 16 and 17. In Zajkowski v. American Steel & Wire Co. (6 Cir.) 258 F. 9, 6 A. L. R. 348, and note, it was held that the master is under duty to exercise reasonable care to warn the employe of dangers of occupational disease which are unknown to the latter.

In Clark v. Banner Grain Co. 195 Minn. 44, 261 N. W. 596, we held that the defendant was liable for negligence in failing to ventilate the place where it required plaintiff to work, thereby exposing him to the fumes of carbon tetrachloride, which he inhaled to his injury while handling grain treated with the chemical for weevils.

The evidence sustains the finding of negligence implicit in the verdict. That defendant through its chief chemist, who was a witness, had knowledge not only of the properties and uses of carbon tetrachloride but also of the dangers incident to the use thereof, appears from his testimony. There is entire absence of any warning to decedent. The claim is that none was necessary upon the ground, which the jury's finding has rendered untenable, that it did not authorize decedent to use carbon tetrachloride.

■ It does not follow as a matter of law that the decedent was guilty of assumption of risk upon the ground that if defendant should have known of the dangers incident to the use of carbon tetrachloride so should the decedent. That

argument was made in many of the cited cases *supra*. The master is under the duty to exercise reasonable care in providing safe instrumentalities and materials. He is chargeable with knowledge of the qualities of the same and the dangers incident to their use which the exercise of reasonable care would disclose. Not so the servant. He is not charged with a similar duty. He is guilty of assumption of risk only where he knows and realizes the danger to him incident to the use. He is entitled to assume until he learns the contrary that the instrumentalities and materials furnished by the master are reasonably safe to use. Harvey v. Welch, 86 N. H. 72, 163 A. 417; Thompson v. United Laboratories Co. 221 Mass. 276, 108 N. E. 1042 (inhaling arsenical rat poison); Wiseman v. Carter White Lead Co. 100 Neb. 584, 160 N. W. 985, note, 6 A. L. R. 356 (inhaling lead fumes); Restatement, Agency, § 521, comment b. Assumption of risk was therefore a fact question.

■ A servant is guilty of contributory negligence where he fails to exercise reasonable care for his own safety. As in the case of assumption of risk, the servant may act until he learns the contrary upon the reasonable assumption that the master has discharged his duty of exercising due care to provide safe instrumentalities and materials with which to do the work and that the master would warn him of any dangers incident to their use where there is such danger. It was not shown that decedent knew the dangers incident to using carbon tetrachloride as a floor cleaner. The evidence was that such dangers were not commonly known. Whether he gained knowledge of such dangers from continued use was, to say the least, an inference to be made from all the evidence. Contributory negligence was therefore a fact question.

■ The damages were not excessive. Defendant emphasizes that decedent would have retired on a pension of $60 per month had he lived three years from the time of his death. But there was no evidence to show the fact. During his expectancy he would have received in salary and pension

over $10,000 had he lived and retired at 70. If he had continued to work after attaining the age of 70 his earnings would have greatly exceeded that amount. His dependents had an expectancy longer than his. He turned over his earnings to his family. Except for his keep and perhaps a little that he spent, his family had the full benefit of all he earned. Outside of his interest in his home, his radio, and his work, his only interest appears to have been his church. While the verdict is large, it is not excessive. Koski v. Muccilli, 201 Minn. 549, 277 N. W. 229; Anderson v. Anderson, 188 Minn. 602, 248 N. W. 35.

■ There are numerous assignments of error relating to misconduct of plaintiff's counsel in his closing argument. Unless objections to misconduct are taken before the jury retires, they cannot be reviewed on motion for new trial or appeal, although the record contains the argument in full. Eilola v. Oliver I. Min. Co. 201 Minn. 77, 275 N. W. 408; State v. Jansen, 207 Minn. 250, 290 N. W. 557. All except one of the assignments are not reviewable under the rule. Defendant's counsel, before the jury retired, excepted to a statement by plaintiff's counsel that the evidence justified a verdict in a certain amount. Upon request the court below gave a vigorous charge covering the matter excepted to in which he instructed the jury that it was for them and not counsel to determine the amount of damages, if any, and to determine that question themselves. No further exception to that part of the charge was taken, nor could it well be. The instruction cured the error, if any, arising from the claimed misconduct.

There are some other assignments of error relating to the admissibility of evidence. We have considered them and find that they are without merit. We do not feel warranted in prolonging the opinion by enumerating them.

Affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.